732 P.2d 290

**Julee C. COX, Claimant-Appellant,**

v.

**DENNY'S RESTAURANTS,
Employer,**
and

**Home Indemnity Company, Surety,
Defendants-Respondents.**

**No. 16324.**

Supreme Court of Idaho.

Feb. 2, 1987.

Garry Gilman, Boise, for claimant-appellant.

John W. Barrett and Michael G. McPeek, Boise, for defendants-respondents.

SHEPARD, Chief Justice.

This is an appeal from an order of the Industrial Commission which denied claimant Cox an award for total permanent disability. Claimant asserted before the Commission that she was totally and permanently disabled by reason of "post-traumatic stress syndrome" which resulted from her employment with her employer, Denny's Restaurants. The Commission, however, found that her mental and emotional problems were not a result of stress resulting from or relating to her employment, but rather that claimant suffered from a histrionic personality disorder and a situational adjustment disorder which were not related to or a result of her employment with Denny's Restaurants. The Commission also held that emotional and mental problems allegedly caused by job stress but unaccompanied by a physical injury do not constitute a compensible injury under our statutory scheme. We affirm the Commission's findings and conclusions relating to the lack of causal connection between claimant's employment and her disability. Hence, it is unnecessary to rule upon the Commission's conclusion relating to the noncompensability of a disability allegedly resulting from job stress-related emotional and mental disabilities.

Claimant Cox was born in 1954 and began working intermittently for Denny's as a waitress and a hostess when she was 16. She left employment with Denny's in 1974 and worked for several employers both in and out of the restaurant business until 1977 when she went back to work at Denny's. She entered the company's management training program in January of 1978 and became an assistant manager in April 1978. In January 1979 she became a manager and continued in that position until July 31, 1980. As manager she earned $324.00 per week and was eligible for bonuses which were dependent upon sales and costs.

The essential thrust of this appeal is the assertion by claimant Cox that the findings of the Commission of a lack of causal relationship between claimant's employment

and her mental and emotional problems are not supported by the evidence. Cox asserts that for a period of time when the restaurant had insufficient employees she was required to work 80–100 hours per week, which coupled with a sexual relationship with her district manager, directly caused her mental problems. Cox also asserts that the Commission erred in relying upon the testimony of only one of the several mental health professionals who testified, since that psychiatrist was only retained by the surety to examine the claimant and was not one of the treating physicians.

The record indicates that Denny's Restaurants are a chain operation and are generally staffed by a manager and two assistant managers. In some individual restaurants, however, the financial condition was deemed not to justify two assistant managers, and in such units non-management personnel would be designated as "key persons" or "unit aides" and would function somewhat as an assistant manager. The Boise Denny's Restaurant did not justify two assistant managers.

Denny's Restaurants operate 24 hours a day in three shifts: 7 a.m. to 3 p.m., 3 p.m. to 11 p.m., and 11 p.m. to 7 a.m. In the Boise restaurant the manager would work during the days and the assistant manager would work during the swing shift and into the graveyard shift. When the manager or assistant manager was not on duty the "key person" would be responsible for managerial duties.

In January 1979, when Cox became manager of the Boise restaurant, she had an assistant manager and a management trainee. From April to August 1979, the restaurant operated with two assistant managers. From August 1979 through 1980 the Boise restaurant operated with Cox as manager and one assistant manager. On June 13, 1980, the assistant manager received a leave of absence until June 19, and again from June 24 to July 11, 1980. On July 31, 1980, claimant Cox attempted suicide, and she has not worked for Denny's since that incident.

■ It was during the time that the assistant manager was on leave during parts of the months of June and July 1980, that claimant asserts that she worked between 80–120 hours per week. It is clear from the decision of the Industrial Commission that the Commission did not assign credibility to the evidence presented by claimant Cox in support of that assertion. The Commission found that claimant Cox was not required to work 80–120 hours a week during the absence of the assistant manager. The Commission noted that claimant Cox did not keep a time card, that there was no unusual surge of business activity requiring extraordinary hours on the part of Cox, that there was available personnel and man hours per shift to do the work, that when claimant Cox was absent from the restaurant for a week during May the assistant manager adequately managed the restaurant, putting in approximately 70 hours per week, and that claimant Cox did not work at all times when she was in the restaurant but spent hours there which were not required. All of those findings of the Commission are supported by substantial competent, although conflicting evidence, and hence will not be disturbed. I.C. § 72–732(1); *Burn v. Nyberg*, 108 Idaho 151, 697 P.2d 1165 (1985). The credibility of witnesses is for the Commission to determine since the Commission has the opportunity to observe their demeanor. *Houser v. Southern Idaho Pipe and Steel, Inc.*, 103 Idaho 441, 649 P.2d 1197 (1982). The Industrial Commission is the final arbiter of conflicting evidence. *Hayes v. Amalgamated Sugar Co.*, 104 Idaho 279, 658 P.2d 950 (1983), *Nelson v. Pumnea*, 106 Idaho 48, 675 P.2d 27 (1983). *See also* I.C. §§ 72–724, –732; *Curtis v. Shoshone Sheriff's Office*, 102 Idaho 300, 629 P.2d 696 (1981).

■ Cox also asserted that the investigation of a complaint filed by her assistant manager caused her additional undue stress. Denny's management policy was that of open communication between the district office and individual restaurants to insure the complaints of non-management

and assistant management personnel could be thoroughly investigated. The record indicates that such a complaint was lodged against claimant Cox by her assistant manager, was investigated, and that she acknowledged certain violations of company policy but was retained in her employment as manager of the restaurant. There is nothing in the record to indicate that Denny's policy was unusual or that the lodging of the one complaint led to any undue stress on claimant Cox.

■ Claimant Cox also asserts that a contributing factor to her mental and emotional problems was her sexual relationship with her district manager. The Commission found that Cox and the district manager had engaged in sexual relations on two occasions in January and February 1980. It is Cox's assertion that the district manager got her intoxicated to the point that she would indulge in sexual relations. However, the Commission found that the established sexual relationship was not the cause of her mental and emotional problems. The record clearly shows that the claimant had been a victim of incest early in her life, that she had quit school at the age of 15 and was on probation until age 18, that she left home to travel with a musician at age 19 by whom she became pregnant and returned home to bear her child in 1974. She then obtained employment and became pregnant by a fellow employee. She married her first husband while she was approximately two months pregnant, and at his insistence obtained an abortion. The testimony of one of the psychiatrists indicated that a post-traumatic stress disorder has to be an experience that is out of the usual human experience or totally dystonic, which means foreign to the person. Given Cox's previous sexual experience, the two isolated sexual experiences with her district manager could hardly be said to have been outside the realm of her usual human experience, and hence the Commission's finding of the lack of relationship between the sexual incidents and her mental illness is supported by substantial competent evidence and will not be overturned.

Claimant Cox next asserts that the Commission erred in finding that she suffered from a histrionic personality disorder and a situational adjustment disorder rather than a post-traumatic stress syndrome from which Cox argues she suffered and continues to suffer.

The Commission found that Cox does not have a physical disorder as a result of her emotional problem, nor are her emotional problems related to a physical disorder. The record supports that finding. However, there is little doubt that claimant Cox has suffered from emotional and mental problems. On July 29, 1980, she began treatment with a psychiatrist, and on July 31, 1980 attempted suicide. As a result she remained hospitalized for psychiatric care for approximately two weeks and continued treatment as a outpatient until October 8, 1980. In July 1981 claimant underwent further psychological and psychiatric treatment and was rehospitalized for such care for approximately two weeks. Thereafter she received additional therapy until February 1, 1982. During February claimant was rehospitalized for psychiatric care in Anchorage, Alaska, and thereafter received psychiatric outpatient treatment for approximately four months. Claimant was rehospitalized in Boise during May and June 1983, and during July of 1983 was rehospitalized in Alaska following which she was treated as an outpatient until May of 1984. At least six mental health professionals have treated claimant between the time of her initial suicide attempt and the hearing before the Commission. Among the evidence tendered by expert witnesses, were at least five different diagnoses.

■ The Commission, in its findings, clearly relied on and essentially adopted the testimony, diagnosis and conclusion of Dr. Holt, a psychiatrist, and rejected the testimony and conclusions of the other testifying mental health professionals. Claimant Cox asserts that such action and the findings of the Commission are therefore erroneous and argues that Dr. Holt's testimony should be rejected since he was the

only expert witness who had not actually treated the claimant between the time of her suicide attempt and the hearing before the Commission, but had merely examined her at the request of the surety.

Dr. Holt's testimony indicated wide experience and expertise in treating post-traumatic stress in Veterans Administration hospitals with Viet Nam veterans and ex-prisoners of war. He testified that post-traumatic stress is caused by an experience that is totally dystonic or outside the realm of usual human experience. After reviewing the volumnous medical records and conducting his own examination and psychological testing of the claimant, he concluded that she did not fit the diagnosis of post-traumatic stress syndrome. Rather, he diagnosed her as suffering from a histrionic personality disorder which was formed early in life and was characterized by violent mood swings and a princess-victim-rescuer pattern of behavior. Histrionics, he stated, are prone to suicide attempts which are not typical of those who suffer from post-traumatic stress syndrome, who rarely attempt suicide. He noted that claimant had twice attempted suicide and been through three very bad marriages. He testified that entering into a marriage after a suicide attempt and failed employment is the typical princess-victim-rescuer behavior of the histrionic.

Dr. Holt testified that the histrionic personality disorder of the claimant developed early in life and was undoubtedly fully formed as a teenager, and hence something from which the claimant suffered before her employment with Denny's. Dr. Holt testified that claimant also suffered from a situational adjustment disorder which he opined resulted from stresses from outside her employment. The testimony indicated that claimant suffered considerable stress during mid–1980 while she was living with her son. Her mother moved into the household and disapproved of the way in which she was raising her son, and disapproved of claimant's fiancee. Her mother moved out of the household, but immediately next door, and her fiancee moved in with the claimant bringing his mother and sister

with him. Fellow workers testified as to the stress that claimant was suffering from those non-employment related pressures.

Claimant is correct in her assertion that there was wide diversity among the expert testimony of the mental illness from which she suffered, and the causal relationship, if any, between that mental illness and her employment with Denny's. However, those differences in diagnoses, and as to causation, standing alone are of no avail to claimant since the Commission is the arbiter of such conflicting evidence, and its determination as to the weight and credibility of the testimony is conclusive upon appeal unless it is clearly erroneous. We do not conclude that the Commission's reliance upon, and essential adoption of the testimony of Dr. Holt, was clearly erroneous. As this Court has stated in *House v. Southern Idaho Pipe and Steel, Inc.,* 103 Idaho 441, 649 P.2d 1197 (1982) and *Arnold v. Splendid Bakery,* 88 Idaho 455, 401 P.2d 271 (1965):

> The fact that a greater number of witnesses supported a view different from the conclusion reached is of no moment in determining the preponderance of the evidence. Rather, the determination must be based on an assessment of the reliability, trustworthiness and probative value of the evidence. As such, the determination is in the first instance a question of fact committed to the particular expertise of the Commission; and its determination as to the weight and credibility of the testimony is conclusive on appeal unless it is clearly erroneous.

■ We hold that the findings of the Commission are based upon substantial competent evidence and they will not be overturned. The Commission found that claimant Cox's mental illness was not employment related and hence, we deem it unnecessary to decide in this case whether stress-related emotional disorders which are caused by employment are compensable. The decision of the Industrial Com-

mission is affirmed. No costs or attorney fees on appeal.

DONALDSON, BAKES and HUNTLEY, JJ., concur.

BISTLINE, Judge, dissenting.

The majority opinion accurately states that the Commission *clearly* relied on and *essentially* adopted the testimony, diagnosis and conclusion of Dr. Holt—rejecting the testimony of the other professional experts who testified favorably to the claimant. Citing the 1982 *Houser* case and the earlier 1965 *Arnold* case, the majority opinion affirms the Commission, and the claimant is, for sure and certain, denied all relief. The opinion quotes verbatim a passage from *Houser*, inadvertently not noting that part of it only was attributable to the earlier *Arnold* case.

The Court's opinion in *Houser* reads thusly:

> The fact that a greater number of witnesses supported a view different from the conclusion reached is of no moment in determining the preponderance of the evidence. *Arnold v. Splendid Bakery*, 88 Idaho 455, 401 P.2d 271 (1965). Rather, the determination must be based on an assessment of the reliability, trustworthiness, and probative value of the evidence. As such, the determination is in the first instance a question of fact committed to the particular expertise of the Commission; and its determination as to the weight and credibility of the testimony is conclusive on appeal unless it appears to be clearly erroneous. *Arnold v. Splendid Bakery, supra.* Claimant has failed to make such a showing, and therefore, it cannot be said that the Commission erred in its conclusion that claimant had failed to meet his burden of proof.
>
> *Houser v. Southern Idaho Pipe & Steel, Inc.*, 103 Idaho 441, 445, 649 P.2d 1197, 1201 (1982).

What the *Arnold* Court actually wrote was only this:

> The fact that the Board may have given more weight to the testimony of some

doctors in its determination of the extent of respondent's permanent disability is not grounds for reversal if the findings are supported by competent and substantial evidence.

> *Arnold v. Splendid Bakery*, 88 Idaho 455, 462, 401 P.2d 271, 278 (1965).

The complete passage in *Arnold* reads this way:

> The fact that the Board may have given more weight to the testimony of some doctors in its determination of the extent of respondent's permanent disability is not grounds for reversal if the findings are supported by competent and substantial evidence. *Each of the doctors who testified at the hearing did not have the same opportunity of observation and examination of respondent as did Dr. Burton.* Dr. Taylor had seen and examined respondent only once; Dr. Coughlin had seen and examined respondent twice; and Dr. Shaw had seen and examined respondent four times, during the eleven years following the accident. She had been under Dr. Burton's care and treatment since July 1956 and he had filed forty-five written reports of her condition with the Board prior to the hearing.
>
> *Arnold, supra,* 88 Idaho at 462, 401 P.2d at 278 (emphasis added).

A distinction of note between this *Cox* case and *Arnold* is that the Court in *Arnold* upheld the Commission's award to the claimant. The issue before the Commission and then the Court was the extent of Mrs. Arnold's permanent disability. The Court succinctly portrayed the background of that case:

> This record discloses that during the eleven years intervening the accident resulting in respondent's injury and the final hearing before the Board respondent was examined by fourteen doctors, nearly all of whom were orthopedic physicians and surgeons. The unrefuted medical history of respondent during said eleven years discloses that she has undergone five surgical procedures consisting of laminectomies and fusions, together with three myelograms. She has suf-

fered almost continuous pain for relief from which she takes medication almost daily.

> *Arnold, supra,* 88 Idaho at 460, 401 P.2d at 276.

Dr. Burton and Dr. Gardner rated her respectively as "totally disabled for gainful employment," and "I don't think she will go back to work, or that she will be able to carry on more than just temporary work." *Arnold, supra,* 88 Idaho at 460, 401 P.2d at 276. Obviously, the Commission went with the treating doctor, Dr. Burton. The surety's production of three witnesses to Mrs. Arnold's two did not carry the day. Nor should it have.

Mr. Houser's knee injury was treated surgically by Dr. Michael Phillips, an orthopedic surgeon, and torn cartilage was removed (a meniscectomy). About a year later, Dr. Keith Taylor, also an orthopedic surgeon, performed arthoscopic surgery of the same knee in January of 1979. The two doctors both rated Houser's physical impairment at ten percent compared to the loss of the leg at the hip. Dr. Slickers, the Houser family doctor who had referred Mr. Houser to Dr. Phillips, testified only that he did not believe that Mr. Houser could return to his usual diesel mechanic occupation. On appeal, the contention was primarily aimed at the Industrial Commission's conclusion that Mr. Houser had failed to provide evidence of any disability in excess of the ten percent permanent impairment. For a view that the Commission erred in not awarding disability in excess of physical impairment, *see* the separate concurring and dissenting opinion of Bistline, J., 103 Idaho 441, 649 P.2d 1197, a view which it is believed would have also been shared by Justice Huntley, had the case been heard one year later.

Houser's disability case before the Commission consisted largely of his testimony and that of his wife. (Another issue in the case on appeal had to do with a knee-related back issue, determined against Mr. Houser on grounds of *res judicata.*)

Other than for the failure of the Court and the Commission to give proper regard to nonmedical factors in setting Mr. Houser's disability, neither I nor anyone should have any problems with the *Houser* case. Today's reliance on the quoted statement from it set out in the opinion will be seen as meaningless. *Two* orthopedic surgeons evaluated Mr. Houser's medical impairment at ten percent. Both were his treating physicians, not after-the-fact impairment evaluators who had no prior contact with him. Why the Court's opinion in that case even cited *Arnold* was and remains beyond my ken. Certainly the facts of *Houser* offer little to substantiate the majority opinion in this case.

*Arnold,* however, is on point. In *Arnold,* the Commission awarded, and this Court in turn sustained, compensation benefits. In doing so, both rejected a theory advanced by the surety that three witnesses beat two. The Court there did not do that on a basis of superiority or lack of superiority of numbers—but on the basis that Dr. Burton and Dr. Gardner were better positioned to give the more valuable evidence—as the portions of that opinion related above readily show. This, philosophically, was judicial recognition of substantial evidence. And it is what these compensation cases should revolve around.

Today, however, misusing *Arnold,* misusing *Houser,* and in all likelihood doing so inadvertently, the Court sustains the Commission in its having turned aside *all* qualified claimant experts in favor of one after-the-fact expert hired by the surety. The timing could not be any better, coming as quickly as it does on the heels of the new majority opinion in *Hazen v. General Store,* 111 Idaho 972, 729 P.2d 1035 (1986) (rehearing denied 12/12/86). There the Court set the precedent for accepting as substantial evidence, available for *defeating* a claim for compensation, the testimony of a nontreating doctor in answer to a convoluted hypothetical question which did not equate with the facts presented. That doctor had been requested by the surety to see Mrs. Hazen for purposes of evaluating Mrs. Hazen's residual permanent disability long, long after she had been surgically

treated and healed. Until that time, he had never seen nor heard of her.

Today's case is on a par, and I for one decline to adopt the philosophy that there is any validity in calling the type of testimony here presented as being that *"substantial"* that it can prevail over all other expert professional testimony of witnesses who dealt with this claimant on a regular basis at the time she had the experiences which led to her inability to work.

The precedent being set is disastrous to the whole area of compensation to working men and women who are deserving of the sure and certain compensation promised them. Unless this Court retreats from the philosophy espoused today, the sureties of this state will have a field day until the day the legislature or the people intervene.

At the least, I sincerely hope that what I have written today sufficiently demonstrates that neither *Arnold* nor *Houser* can be said to justify the Court's judgment.