### DEPARTMENT OF the AIR FORCE, Petitioner,

v.

### Robert J. SWIDER and Department of Employment Security, Respondents.

### No. 910069–CA.

Court of Appeals of Utah.

Dec. 6, 1991.

---

Dee V. Benson, Robert H. Wilde and Clare A. Jones, Midvale, for petitioner.

R. Paul Van Dam and Emma R. Thomas, Salt Lake City, for respondents.

Before JACKSON, ORME and RUSSON, JJ.

ORME, Judge:

Petitioner, the United States Air Force, challenges a decision of the Board of Review of the Industrial Commission granting unemployment benefits to an Air Force employee terminated for drug use. We affirm.

## FACTS

In 1986, the United States Air Force adopted a "zero tolerance" anti-drug policy for its workforce, and informed employees they could be discharged for possessing or using illegal drugs on base, or working under the effects of such drugs. In May of 1990, the Air Force announced plans to supplement the policy with a comprehensive drug testing program for all civilian employees.

From December of 1970 until May of 1990, respondent Robert J. Swider was employed by the Air Force as an aircraft mechanic at Hill Air Force Base. In July of 1989, Swider spoke to Vicky Brown, a fellow employee at the base, about frequent on-base cocaine use Swider had ob-

served among his co-workers. Brown asked Swider if she could pass the information along to his supervisor, a Mr. Stevenson, and Swider agreed. Brown then engaged in a series of conversations with Stevenson, in which she relayed Swider's observations. As a result of his contact with Brown, Stevenson contacted the Air Force Office of Special Investigations (OSI) and informed them of possible on-base drug use among employees.

OSI subsequently installed surveillance cameras in Swider's work area, and several of Swider's co-employees were filmed inhaling cocaine. These co-workers were eventually arrested and interviewed by OSI personnel, at which time one of them identified Swider, who had not been shown on the videotape using drugs, as also having used cocaine on base. In November of 1989, Swider received death threats, allegedly from individuals who had discovered it was he who leaked information about their drug use to OSI. Swider asked his supervisor what protection the Air Force could offer him, and his supervisor directed him to OSI.

Swider met with OSI agents in December of 1989. During the course of their discussion, Swider admitted to the agents that he had smoked marijuana while on a rafting trip in May of 1989. He also informed them that, subsequent to that incident, he had been completely drug-free for eight months. In January of 1990, Swider enrolled himself in a 30-day drug rehabilitation program. With full disclosure of his

intention to do so, he was given time off by the Air Force to enter the program, and successfully completed it.[1]

In February of 1990, an OSI report was issued, concluding that Swider's employment should be terminated because of his off-base drug use in May of 1989. Swider was discharged from Hill Air Force Base a full year after the instance of drug use, in May of 1990. The next month, he applied to the Department of Employment Security for unemployment benefits. He was initially denied all benefits on the ground that he had been discharged for "just cause."[2] Swider appealed the decision to an Administrative Law Judge (ALJ), who reversed the initial denial. The Air Force then appealed to the Industrial Commission's Board of Review, which affirmed the ALJ's decision to grant benefits.

The Air Force now seeks our review, challenging the Board's decision on two grounds. First, the Air Force assails the Board's factual findings that Swider (1) voluntarily reported his drug use to the OSI and (2) was insulated from discipline because he voluntarily entered a drug rehabilitation program.[3] Further, the Air Force challenges the Board's determination that Swider's actions were not "culpable" for purposes of establishing a "just cause" termination.

## STANDARDS OF REVIEW

This court's review of decisions of the Board of Review is governed by provisions

---

1. It is not altogether clear why, if he had been drug-free for so long, Swider elected to enter a drug rehabilitation program at this time.

2. Utah Code Ann. § 35–4–5(b)(1) (1991 Supp.) disallows unemployment benefits to those "discharged for just cause ... if so found by the commission."

3. The Air Force also refers repeatedly to evidence of on-base cocaine use by Swider, and questions why both the ALJ and the Board of Review failed to acknowledge Swider had used cocaine while on base. The Air Force presumes the incriminating evidence was improperly excluded as hearsay, and claims it should have been admitted as an admission by a party opponent under Utah R.Evid. 801(d)(2). We agree that at least some of the inculpatory evidence falls within the scope of Rule 801(d)(2), but do

not agree it was excluded for evidentiary reasons. Instead, it appears the ALJ and Board decided not to believe it. The ALJ stated that "[t]he evidence in this case is in dispute as to whether or not the claimant actually used a controlled substance on Hill Air Force Base premises. The Air Force Office of Special Investigations Report contained some discrepancies as far as dates and informational data. The claimant emphatically denies using cocaine on the employer's premises." The ALJ and Board were not obligated to credit the OSI report or third-person testimony over Swider's own testimony; they were free to believe Swider, as they apparently did. *See Hurley v. Board of Review*, 767 P.2d 524, 526–27 (Utah 1988) (an agency's findings of fact are accorded substantial deference, and "will not be overturned if based on substantial evidence, even if another conclusion from the evidence is permissible").

of the Utah Administrative Procedures Act (UAPA). That act controls judicial review of formal adjudicative proceedings, and requires reversal of a Board decision when:

(d) the agency has erroneously interpreted or applied the law;

. . . .

(g) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by substantial evidence when viewed in light of the whole record before the court;

. . . .

Utah Code Ann. § 63–46b–16(4) (1989).

■ Petitioner Air Force first challenges the correctness of the Board's findings of fact. In accordance with the mandate just quoted, this court grants great deference to an agency's findings, and will uphold them if they are "supported by substantial evidence when viewed in light of the whole record before the court." Utah Code Ann. § 63–46b–16(4)(g) (1989). See Grace Drilling Co. v. Board of Review, 776 P.2d 63, 67 (Utah App.1989). "Substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 68 (quoting Idaho State Ins. Fund v. Hunnicutt, 110 Idaho 257, 715 P.2d 927, 930 (1985)). In applying the substantial evidence test, we review the "whole record" before the court, and consider both evidence that supports the Board's findings and evidence that fairly detracts from them. Id. It is the petitioner's duty to properly present the record, by marshaling all of the evidence supporting the findings and showing that, despite that evidence and all reasonable inferences that can be drawn therefrom, the findings are not supported by substantial evidence. Id. See Heinecke v. Department of Commerce, 810 P.2d 459, 464 (Utah App.1991); Sampson v. Ri-

chins, 770 P.2d 998, 1002 (Utah App.), cert. denied, 776 P.2d 916 (Utah 1989).

■ The Air Force's second claim—that the Board erred in concluding Swider was not "culpable"—turns to a significant degree on factual findings concerning Swider's conduct while employed, and on the extent to which we should defer to the Board's determination of how that conduct "affects the continuance of the employment relationship." Utah Admin.Code R475–5b–102 (1990) (defining "culpability"). In Morton Int'l, Inc. v. Utah State Tax Comm'n, 814 P.2d 581 (Utah 1991), the Utah Supreme Court held that where "there is a grant of discretion to the agency concerning the language in question, either expressly made in the statute or implied from the statutory language," id. at 589, the agency is entitled to a degree of deference such that it should be affirmed if its decision is reasonable and rational. Id. We conclude the requisite grant of discretion was made by the Legislature to the Board, as evidenced by the statutory language permitting a denial of benefits where a termination is for "just cause ... if so found by the commission." Utah Code Ann. § 35–4–5(b)(1) (1991 Supp.) (emphasis added). See Tasters Ltd. v. Department of Employment Sec., 819 P.2d 361, 364–66 (Utah App.1991) (recognizing similar language to constitute express grant of discretion); Johnson–Bowles Co. v. Department of Commerce, No. 900558, slip op. at 15–16, (Utah Ct.App. Nov. 29, 1991) (same).[4]

## ANALYSIS

■ This court has previously recognized the Air Force's legitimate interest in maintaining a drug-free work environment, and its right to enforce its "zero tolerance" drug policy. See, e.g., Department of Air Force v. Department of Employment Sec.,

---

4. Prior to Morton Int'l, we would also have concluded the Board's decision was entitled to this same degree of deference but would have reached that conclusion by focusing more on the Board's expertise and experience than on the nature of the Legislature's grant of authority to the Board. See, e.g., Taylor v. Utah State Training School, 775 P.2d 432, 434 (Utah App. 1989) (when an agency decision involves application of the relevant rules of law to the facts, "a [reviewing] court should afford great deference to the technical expertise or more extensive experience of the responsible agency") (quoting Department of Admin. Servs. v. Public Serv. Comm'n, 658 P.2d 601, 610 (Utah 1983)).

786 P.2d 1361, 1364 n. 3 (Utah App.), *cert. denied, United States v. Industrial Comm'n,* 795 P.2d 1138 (1990).[5] However, the question before us is not whether the Air Force was, as a matter of basic employment law, within its rights when it discharged Swider. Instead, we are asked to decide the completely separate issue of whether the Board could reasonably conclude Swider was not discharged for "just cause" under the state's unemployment scheme, as would warrant his deprivation of a terminated employee's usual right to collect unemployment benefits. *See* Utah Admin.Code R475–5b–101 (1990). Accordingly, our analysis is limited to a consideration of (1) whether the Board of Review's factual findings concerning Swider's activities while employed are supported by substantial evidence in the record as a whole and (2) whether those findings reasonably support the Board's conclusion that Swider's discharge was not for "just cause," due to a lack of culpability.

## I. Findings Were Supported By Substantial Evidence

In concluding Swider was discharged without just cause for purposes of his entitlement to unemployment benefits, the Board first compared Swider's conduct with that of the claimant in an earlier case, in which the Board had affirmed a *denial* of unemployment benefits to one of Swider's co-workers, Dennis L. Wagstaff. The Board in the instant proceeding found that, in the Wagstaff matter, "the employer had presented adequate evidence to support the conclusion that the claimant voluntarily abused drugs while on the Air Base, in violation of known rules which prohibited such abuse." Further, Wagstaff "did not report his drug usage or seek assistance to overcome the problem of drug abuse."

The Board then distinguished between the instant case and the Wagstaff case on two grounds, concluding that those differences suggested a different result. First, the Board found that while Wagstaff had not voluntarily admitted his drug use to his employer, "the [Air Force] learned of [Swider's] problem with drugs because the claimant himself brought the matter to the attention of the proper authorities." Second, the Board determined Swider had "volunteered for and was accepted into a drug rehabilitation program approved by the Air Force," while Wagstaff had not, and stated that "Air Force policy provides that employees who seek the assistance of such a rehabilitation program and remain drug free thereafter 'will not be subject to disciplinary action.'" Given these distinguishing facts, the Board concluded that Swider was eligible for unemployment benefits even though it had determined his co-worker, Wagstaff, was not. The Air Force now challenges these two findings.

■ With regard to the first finding—that Swider brought his drug use to the attention of Air Force investigators—the Air Force expressly acknowledges that "on December 1, 1989, Mr. Swider 'brought himself to the attention of the authorities.'" Nonetheless, the Air Force attempts to diminish the significance of Swider's admission by pointing out that the admission occurred in December of 1989—several months after the OSI investigation had begun bearing fruit, and one month after a co-employee had identified Swider as an on-base cocaine user. The Air Force speculates that, given the timing of his confession to OSI officials, Swider only turned himself in to speed the inevitable. Be that as it may, the Board of Review could, nonetheless, have been impressed by the simple fact that Swider turned himself in at all, and an admission of any kind does distinguish Swider's conduct from that of Wagstaff.[6] Further, the Air Force's expla-

**5.** The Air Force's interest has been deemed "especially imperative" where its employees are engaged in sensitive, highly technical tasks, such as assembling or repairing jet aircraft. *See Department of Air Force,* 786 P.2d at 1364. *See also Johnson v. Department of Employment Sec.,* 782 P.2d 965, 972 (Utah App.1989) (Orme, J., concurring) (a government contractor constructing national defense products "is entitled to insist, in an aggressive and uncompromising way, on an absolutely drug-free work*force* and not merely a drug-free work*place*").

**6.** Moreover, the Board may have been impressed by Swider's prior disclosure to Brown of cocaine use in his work area, and his express

nation for Swider's admission is wholly unsubstantiated in the record. There is no evidence to suggest Swider came forward simply to hasten the inevitable. In fact, there was no evidence presented that Swider even knew he had been implicated. The Board was entitled to find that Swider came forward to gain Air Force protection after receiving the death threats. Because it is uncontroverted that Swider voluntarily confessed his past drug use to OSI agents, we uphold the Board's finding on that issue.

■ Second, the Air Force claims the Board wrongly interpreted Air Force policy in finding that Swider's voluntary enrollment in a drug rehabilitation program protected him from disciplinary action. In making its finding of disciplinary immunity, the Board relied on a May 1989 notice circulated by the Air Force to all civilian employees at Hill Air Force Base. The notice informed employees that a drug testing program would be implemented no sooner than sixty days from the date of the letter, and continued, with our emphasis:

> While the Air Force cannot tolerate the use of illegal drugs, we encourage any employee who has a substance abuse problem to seek appropriate counseling and rehabilitation assistance. Employees who voluntarily identify themselves as having an illegal drug problem *within the timeframes established by the program*, seek counseling, or rehabilitation, agree to a last chance agreement and refrain from using illegal drugs will not be subject to disciplinary action.

The Air Force claims that the phrase "timeframes established by the program" refers to the sixty-day period between the date of the notice and the commencement of the drug testing program. Since Swider did not come forward until some eight months after the date of the letter, the Air Force asserts, he did not fall within the sixty-day "window" and could therefore be disciplined. That assertion is incorrect. The letter stated only that the program would be implemented in a minimum of sixty days; it made no reference to the sixty-day period being a "window" of immunity, after which period an employee could be terminated regardless.[7] Further, it is impossible to reconcile the Air Force's position with the letter's statement that *the program*, which was being announced prospectively, was to establish the time frame for disciplinary immunity. We do not understand how, when the program was to establish the time frame, the Air Force can plausibly contend that the time frame ended before the program was implemented. Accordingly, we reject the challenge to the Board's finding in this regard.

For the above-mentioned reasons, we hold that there is substantial evidence in the record as a whole to support the Board's findings which are challenged by the Air Force in this appeal.

## II. Respondent Was Not Culpable

■ Rule 475–5b–101 of the Utah Administrative Code states that an employee is ineligible to receive unemployment benefits when the employee has been terminated for "just cause," i.e., when the "job separation ... is necessary due to the seriousness of actual or potential harm to the employer." Rule 475–5b–102 then sets forth the three factors which establish just cause, and which are necessary for a determination of ineligibility for unemployment

authorization that she pass the information along to his supervisor. Although, by emphasizing that Swider turned *himself* in, the Board's finding does not appear to place any significance on his "whistle-blowing," the clear causal link would not have escaped the Board's attention. The "whistle-blowing" led to the death threats, which led to Swider's referral to OSI, which led to his disclosure to OSI that he had smoked marijuana while on vacation some months previous.

7. Additional language in the letter supports this position:

> However, if an employee is otherwise determined to use illegal drugs, he or she will be subject to disciplinary action, including possible removal from Federal service. *Once this program is implemented*, removal action will be proposed for any employee receiving a second positive [urine] test, refusing to obtain counseling or rehabilitation after being found to use illegal drugs, or adulterating or substituting a [urine] specimen.

insurance benefits. Those factors are: (1) knowledge on the part of the employee as to the conduct the employer expected, (2) conduct that was within the employee's power and capacity to control, and (3) culpability. It is uncontroverted that Swider's conduct satisfied the elements of knowledge and control. Therefore, we consider only whether he was culpable.

Culpability is defined in Rule 475–5b–102 as

> the seriousness of the conduct or the severity of the offense as it affects continuance of the employment relationship. The discharge must have been necessary to avoid actual or potential harm to the employer's rightful interests. A discharge would not be considered "necessary" if it is not consistent with reasonable employment practices.

Utah Admin.Code R475–5b–102 (1990). In determining if certain conduct is culpable, Rule 475–5b–102 states:

> The wrongness of the conduct must be considered in the context of the particular employment and how it affects the employer's rights. If the conduct was an isolated incident of poor judgment and there is no expectation that the conduct will be continued or repeated, potential harm may not be shown and therefore it is not necessary to discharge the employee.

*Id.* Further, the rule emphasizes that "longevity and prior work record are important in determining if the act or omission is an isolated incident or a good faith error in judgment." *Id.*

Swider was employed by the Air Force for almost twenty years. During that time he received twenty awards and commendations for his work performance, consistently received laudatory appraisals from his superiors, and was never subjected to discipline prior to his termination. He acted in important additional capacities at the base, serving as an alternate supervisor and a Hazardous Waste Site Monitor. Swider's supervisor testified that he was unaware of any specific problem resulting from Swider's work, much less from his smoking marijuana on vacation. The supervisor also testified that Swider's work was dependable, and that Swider had always seemed quite capable of performing his duties. The Board believed that, with the exception of an isolated incident of marijuana use in May of 1989, he had been completely drug free for eight months. It was reasonable for the Board to have concluded there was no expectation that Swider's drug use would have been continued or repeated. He caused the on-base drug use of his co-workers to be called to the attention of the proper authorities. He also entered and completed a voluntary drug rehabilitation program.

Given Swider's exemplary work history, his demonstrated desire to distance himself from drugs, and evidence indicating Swider's past drug use was an isolated incident, it was reasonable and rational for the Board to conclude Swider's conduct was not sufficiently culpable to render his termination one for "just cause" for purposes of adjudicating his entitlement to unemployment benefits.

## CONCLUSION

There was substantial evidence in the record to support the Board's findings of fact. Further, it was reasonable for the Board to conclude that Swider's conduct lacked culpability, as the term is used in the regulations of the Department of Employment Security. Accordingly, we affirm the Board's decision.

JACKSON and RUSSON, JJ., concur.