Betty L. STOKES, Petitioner,

v.

BOARD OF REVIEW OF the INDUSTRI-
AL COMMISSION OF UTAH; Ameri-
can Express; and Zurich–American In-
surance Company, Respondents.

No. 910014–CA.

Court of Appeals of Utah.

April 22, 1992.

Before GARFF, GREENWOOD and
RUSSON, JJ.

GREENWOOD, Judge:

Petitioner Betty L. Stokes appeals the
Industrial Commission's denial of workers'
compensation benefits. We affirm.

## BACKGROUND

Betty Stokes (Stokes) was hired as a
secretary by American Express in 1982,
and worked there until 1988. She held five
different positions at American Express,
including supervisory positions in three de-
partments. Stokes was promoted often
and generally received excellent reviews.

In December 1987, while working as a
supervisor in the key entry department,
Stokes allowed the employees in her de-
partment to watch a video, "Crocodile Dun-
dee," on work time, and to take extended
lunch periods to do Christmas shopping.
Both activities violated company policy.
Stokes's supervisor spoke with her about
these incidents and placed her on "verbal
warning."

In April 1988, Stokes received an unfavorable evaluation from her supervisor. Stokes was upset about the evaluation and, in accordance with company policy, discussed it in several meetings with her supervisor and members of the Human Resources Department. After one of the meetings, Stokes suffered chest pains and was taken to the emergency room at Pioneer Memorial Hospital.

From January through July of 1988, Stokes's department failed to meet its performance goals and Stokes again received unfavorable evaluation ratings from her supervisor. She was also accused of falsifying her department's production reports. After meeting with her supervisor about the reports, Stokes was placed on "Step III Warning," which is the final step in American Express's disciplinary procedures before termination.

In July 1988, Stokes called American Express's Human Affairs Department in New York and reported that she had been sexually harassed by her supervisor, a woman with whom Stokes had had a close personal friendship from 1982 until the spring of 1987. During this period, they spent time together at work and away from work and became involved in each other's personal lives. Stokes alleged that her supervisor sexually harassed her on several occasions beginning in June of 1987. Specifically, Stokes claimed that her supervisor kissed her "passionately" when Stokes gave her a ride to the airport, attempted to seduce her on a weekend trip the two took to Wendover, and repeatedly invited Stokes to spend the night at her house. Stokes also made these allegations to a member of the Human Resources Department in Salt Lake City. After investigating the allegations, the Salt Lake City Human Resources Department determined that Stokes's claims were without merit. The New York office took no action.

In July 1988, Stokes again collapsed at work. She was taken to a hospital emergency room where she was treated for chest pains, given several medical tests and released. Her chest pains continued and one of her doctors advised her not to go to work. Stokes did not return to American Express and was terminated on July 26, 1988 because her doctors said she could not return to work. She received salary disability payments for a period of time and payments as provided by a disability policy. After her termination, Stokes was treated by a psychiatrist and a clinical social worker, both of whom diagnosed her as having post traumatic stress disorder (PTSD).

Stokes filed a claim with the Industrial Commission for workers' compensation benefits. She claimed that her supervisor and others instigated company disciplinary proceedings against her in retaliation for her failure to comply with her supervisor's alleged sexual advances. Stokes contended that the stress of the sexual harassment and the retaliatory actions caused her to suffer PTSD and aggravated her peptic ulcers, chest pains and sciatic nerve damage, rendering her disabled.

Stokes's claim for workers' compensation benefits was heard by an administrative law judge (A.L.J.). The hearing lasted seven days. The A.L.J. considered the testimony of nine witnesses and several volumes of medical and psychological reports. Following the hearing, the A.L.J. found the alleged sexual harassment never occurred. She also determined the instigation and processing of the disciplinary proceedings against Stokes had been properly and appropriately handled in accordance with company procedures. Each disciplinary action by American Express was either the usual one in similar circumstances or more lenient. The A.L.J. also found that other events in Stokes's life, outside of work, could have caused the PTSD and aggravated her other conditions. The A.L.J. determined that Stokes failed to prove legal causation, as required in *Allen v. Industrial Commission*, 729 P.2d 15, 25 (Utah 1986), and therefore denied Stokes compensation. Stokes filed a request for review of the A.L.J.'s findings with the Industrial Commission. The Commission sustained the A.L.J.'s order and denied the request for review. This appeal followed.

## ISSUES

We examine on appeal the following arguments raised by Stokes as to why the A.L.J. allegedly erred in denying her compensation: (1) the A.L.J.'s findings are contrary to the evidence; (2) Stokes is entitled to compensation; (3) the A.L.J. erroneously required Stokes to prove fault and proximate cause; and (4) the A.L.J. acted outside her authority in making her findings concerning sexual harassment.

## STANDARD OF REVIEW

Utah Code Ann. § 63–46b–16 (1988) of the Utah Administrative Procedures Act (UAPA) provides:

> (1) As provided by statute, the Supreme Court or the Court of Appeals has jurisdiction to review all final agency action resulting from formal adjudicative proceedings.
>
> . . . . .
>
> (4) The appellate court shall grant relief only if, on the basis of the agency's record, it determines that a person seeking judicial review has been substantially prejudiced by any of the following:
>
> (b) the agency has acted beyond the jurisdiction conferred by any statute;
>
> . . . . .
>
> (d) the agency has erroneously interpreted or applied the law;
>
> . . . . .
>
> (g) the agency action is based upon a determination of fact, made or implied by the agency, that is not supported by substantial evidence when viewed in light of the whole record before the court;
>
> . . . .

The requirement of "substantial prejudice" in section (4) manifests the legislature's intent that relief not be given for an agency error if the error was harmless.[1] *Morton Int'l, Inc. v. Auditing Div.*, 814 P.2d 581, 584 (Utah 1991).

In accordance with the statutory language above, "this court grants great def-

erence to an agency's findings, and will uphold them if they are 'supported by substantial evidence when viewed in light of the whole record before the court.' " *Department of Air Force v. Swider*, 824 P.2d 448, 451 (Utah App.1991) (quoting Utah Code Ann. § 63–14b–16(4)(g) (1989)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 451 (quoting *Grace Drilling Co. v. Board of Review*, 776 P.2d 63, 67 (Utah App. 1989)). In making this determination, we review the whole record before the court. *Id.* at 451. "It is the petitioner's duty to properly present the record, by marshaling all of the evidence supporting the findings and showing that, despite that evidence and all reasonable inferences that can be drawn therefrom, the findings are not supported by substantial evidence." *Id.* at 451.

We grant discretion to an agency's application of the law to particular facts only when "there is a grant of discretion to the agency concerning the language in question, either expressly made in the statute or implied from the statutory language." *Morton*, 814 P.2d at 589; *Swider*, 824 P.2d at 451. "[A]bsent a grant of discretion, a correction-of-error standard is used in reviewing an agency's interpretation or application of a statutory term." *Morton*, 814 P.2d at 588.

The workers' compensation statute reads in pertinent part:

> Each employee ... who is injured ... by accident arising out of and in the course of his employment, wherever such injury occurred, ... shall be paid compensation for loss sustained on account of the injury or death, and such amount for medical, nurse, and hospital services and medicines....

Utah Code Ann. § 35–1–45 (1988).

"[S]ection 35–1–45 does not expressly or impliedly grant discretion to the Industrial Commission in construing the specific language of the statute." *Cross v. Board of Review*, 824 P.2d 1202, 1204 (Utah App.

---

1. An error is considered harmless if it is "sufficiently inconsequential that ... there is no reasonable likelihood that the error affected the outcome of the proceedings." *Morton*, 814 P.2d at 584 (quoting *State v. Verde*, 770 P.2d 116, 120 (Utah 1989)).

1991). We therefore review for correctness the A.L.J.'s application of the statute to these facts.

### FINDINGS OF FACT

■ Stokes argues that the A.L.J.'s findings are contrary to the evidence presented at the hearing. Stokes particularly challenges the A.L.J.'s finding that Stokes's injuries were not work-related.

The A.L.J.'s "Findings of Fact, Conclusions of Law and Order" includes detailed summaries of each witness's testimony. Those summaries are consistent with and fairly represent the actual transcribed proceedings. According to the A.L.J., Stokes testified about specific acts of alleged sexual harassment by her supervisor. She testified that on one occasion she drove her supervisor to the airport and her supervisor suddenly and unexpectedly kissed her "passionately on the mouth." Stokes also told of a trip she took to Wendover with her supervisor on which the supervisor had arranged for a hotel room with only one bed and a hot tub.

Barry Richards (Richards), a clinical social worker who diagnosed Stokes with PTSD, testified that her condition was triggered by the passionate kiss Stokes claims her supervisor gave her at the airport. Stokes also introduced records of her psychiatrist, Dr. Peter P. Heinbecker (Heinbecker), indicating that Stokes's PTSD occurred "once it appeared to her that she was being retaliated against for refusing the sexual advancements of her supervisor ... particularly when she realized that her supervisors were attempting to have her fired." Neither Richards nor Heinbecker had discussed with Stokes other stressful events she had recently endured, such as her stepson's suicide, that may have caused the PTSD. Nor was either of them aware of her entire prior history of depression.

American Express called five witnesses who worked closely with Stokes and her supervisor to testify as to their knowledge of Stokes's friendship and activities with her supervisor, what Stokes and her supervisor had told them, and of the supervisor's reputation for being heterosexual. All of them opined from their personal knowledge and observations that the alleged sexual harassment incidents did not occur.

American Express introduced cab receipts showing that Stokes's supervisor took a cab to the airport on the day Stokes claims to have driven her and been kissed by her at the airport. They also introduced evidence of other traumatic events Stokes had experienced during this time, which could have caused the PTSD and aggravated her physical problems.

Stokes was the only witness to testify that the alleged sexual advances actually occurred. No corroborating evidence was introduced. Her supervisor testified that the incidents did not occur. The fact that Stokes's medical experts attribute her condition to the alleged events is not conclusive. Stokes's description to Richards and Heinbecker of the alleged events does not prove they in fact occurred. "Medical evidence is insufficient to prove industrial causation of any injury if it is equally probable that a nonindustrial accident caused the condition." *Dutton v. Industrial Comm'n*, 140 Ariz. 448, 682 P.2d 453, 455 (Ariz.App.1984); *see also Allen v. Industrial Comm'n*, 729 P.2d 15, 27 (Utah 1986). Evidence was introduced which indicated that other events, unrelated to work, and of which Heinbecker and Richards were unaware, could have caused Stokes's PTSD.

The A.L.J. found that the alleged sexual harassment incidents never occurred. She made the following finding:

> Although it is clear that [Stokes] believes her testimony, she is simply not credible, particularly in light of the other testimony and various evidence produced in the numerous exhibits in this matter.

American Express also called six American Express employees to testify about the company's disciplinary procedures, the specific steps taken with Stokes, and the reasons they were implemented.

The A.L.J. found that under American Express's guidelines, Stokes's supervisors were justified in placing Stokes on "warning" for allowing her employees to watch a

video on work time and to take extended lunch periods. The A.L.J. stated that all the steps taken by Stokes's supervisors were appropriate and that the "unusual part of the process was Stokes's extreme reaction to the process. She did not recognize the very serious nature of her errors and attempted to minimize them rather than deal with them as problems." The A.L.J. found:

> In reviewing the extensive exhibits presented in this matter, the A.L.J. cannot find that the employer handled any of these problems in an inappropriate manner. Indeed, it would appear that in most of these circumstances, they went out of their way to try and work with the applicant in a solution to these various problems.

Based on these determinations, the A.L.J. found Stokes's injuries were not work-related.

> Based on all of the evidence presented, and particularly the evidence concerning the alleged sexual harassment, the A.L.J. cannot find as a matter of fact that those alleged inciden[ts] are the source of the applicant's problems. Indeed, the hard physical evidence as well as the testimony points in the direction of the earlier experience that the applicant underwent with the death of her stepson, something unrelated to her employment. There may, perhaps, be other sources that remain unknown to the court. However, it cannot be the alleged events of sexual harassment inasmuch as the findings would indicate that those did not take place.

An agency's findings of fact are accorded substantial deference, and "will not be overturned if based on substantial evidence, even if another conclusion from the evidence is permissible." *Hurley v. Board of Review*, 767 P.2d 524, 526–27 (Utah 1988). We find that the A.L.J.'s findings are supported by substantial evidence and we therefore conclude that the A.L.J.'s findings of fact do not constitute error.

## ENTITLEMENT TO COMPENSATION

Stokes argues that she is entitled to workers' compensation benefits for her mental and physical disabilities. Under the Workers' Compensation Act, Utah Code Ann. § 35–1–45, an employee is entitled to workers' compensation benefits for injuries occurring "by accident arising out of and in the course of his employment." To receive benefits, the claimant must meet the two-part test prescribed by the Utah Supreme Court in *Allen v. Industrial Commission*, 729 P.2d 15 (Utah 1986). First, the claimant must show that the injury occurred "by accident." *Id.* at 18. "[A]n accident is an unexpected or unintended occurrence that may be either the cause or the result of an injury." *Id.* at 22.[2] Second, the claimant must show a causal connection between the injury and the activities or exertions in the work place. *Large v. Industrial Comm'n*, 758 P.2d 954, 956 (Utah App.1988). To do so, the claimant must prove both legal and medical causation. "Where the claimant suffers from a preexisting condition, an unusual or extraordinary exertion is required to prove legal causation. Where there is no preexisting condition, a usual or ordinary exertion is sufficient." *Allen*, 729 P.2d at 26. The standard of proof for causation is by a preponderance of the evidence. *Large*, 758 P.2d at 956.

Both physical and psychological injuries resulting from work-related mental stress are compensable under Utah's workers' compensation statute. *See Mounteer v. Utah Power & Light Co.*, 773 P.2d 405, 408 (Utah App.1989), 823 P.2d 1055 (Utah 1991).[3] In *Mounteer*, the claimant was em-

---

**2.** The A.L.J. did not make findings of whether an "accident" occurred. On appeal, as well, the parties have not addressed the issue, nor have they identified the "accident" or "accidents" in this case. We, therefore, do not address the subject because it was not raised nor briefed on appeal.

**3.** *See* Larson's Workmen's Compensation Law 1B § 42.23, at 7–876, "[A]n increasing number of cases have appeared in a third category, involving a mental or emotional stimulus resulting in a primarily 'nervous' injury, and there is already visible an impressive majority position supporting compensability in these cases." *See also Intermountain Health Care, Inc. v. Ortega*,

ployed at Utah Power & Light Company (UP & L). He developed post traumatic stress disorder symptoms due to his unsuccessful attempts to put out a fire in the Wilberg Mine which caused the deaths of twenty-one of his co-workers. Subsequently, another employee of UP & L accused claimant over a loudspeaker of being on drugs. Other employees heard the accusations and claimant asserted this event aggravated his post traumatic stress disorder, requiring him to be treated at a psychiatric hospital, and rendered him permanently disabled. Claimant brought an action against UP & L for slander, intentional infliction of emotional distress and negligent infliction of emotional distress. The trial court dismissed claimant's action because it found that since claimant was suing his employer for injuries related to his employment, the proper and sole remedy would be under the Workers' Compensation Act. This court affirmed. *Mounteer*, 773 P.2d 405, 408 n. 3 (Utah App.1989). The Utah Supreme Court upheld the dismissal of the negligent infliction of emotional distress claim and stated that Utah's Workers' Compensation Act provides the remedy for "a diminution or loss of earning power caused by a physical *or mental injury* or by death sustained in the work place." *Mounteer*, 823 P.2d at 1057 (emphasis added). The court found that claimant's "damages arising from any emotional distress can be compensated only under the workers' compensation scheme. His injuries, being mental and physical in nature, clearly fall within the coverage formula." *Id.* at 1058.

■ An abnormal reaction to normal events, however, is not compensable where the abnormality is created by non-work related incidents. *See Cox v. Denny's Restaurants*, 112 Idaho 321, 732 P.2d 290, 294 (1987); *SAIF v. Griffith*, 66 Or.App. 709, 675 P.2d 1092, 1094, rev. denied 296 Or. 638, 678 P.2d 739 (1984); *McGarrah v. SAIF*, 59 Or.App. 448, 651 P.2d 153 aff'd, 296 Or. 145, 675 P.2d 159, 171 (1983);

562 P.2d 617, 619 (Utah 1977) (supreme court affirmed an award of workers' compensation

*Williams v. Western Elec.*, 178 N.J.Super. 571, 429 A.2d 1063, 1071 (1981).

In *Cox*, the Idaho Supreme Court affirmed the Industrial Commission's denial of workers' compensation benefits to an employee for PTSD allegedly caused by work stress because it found the condition was not work-related. Rather, it found the PTSD to have stemmed from a personality disorder and situational adjustment disorder unrelated to the employee's employment. 732 P.2d at 294.

In *Williams*, the court held there must be objective evidence which, when viewed realistically, demonstrates that the alleged work exposure was a materially contributing factor. 429 A.2d at 1070–71. In *Williams*, the claimant sought benefits for psychological and physical injuries resulting from work stress. In denying him benefits, the court found that claimant had a preexisting condition of schizophrenia and the stressful work conditions were a product of his subjective reactions.

Nor can one recover for reactions to imaginary events or events which are not supported by the record. *See McGarrah*, 675 P.2d at 171; *State Accident Ins. Fund Corp. v. Griffith*, 66 Or.App. 709, 675 P.2d 1092, 1093 (1984); *Knoetzel v. State Accident Ins. Fund*, 37 Or.App. 627, 588 P.2d 89, 90–91 (1978), *rev. denied*, 286 Or. 1 (Or.1979).

In *Knoetzel*, the Oregon Court of Appeals affirmed the denial of workers' compensation benefits to claimant on the basis that he did not sustain his burden of proving his disability arose out of his employment. Claimant alleged that his psychological disabilities and paranoia were caused by fellow employees insulting him and suggesting that he was homosexual. Claimant introduced his doctor's reports containing claimant's complaints of being mistreated by fellow employees. He also introduced his psychiatrist's records wherein the psychiatrist attributed claimant's condition to work-related incidents. Additionally, he submitted a lengthy catalogue of events he interpreted as being directed against him.

benefits for preexisting psychologically based disabilities).

The court found that the record as a whole did not persuade them that the triggering incidents were real. Rather, the court found them to be fantasies or clear misinterpretations of real events. 588 P.2d at 90–91.

In *McGarrah,* the claimant suffered from anxiety and depressive neurosis resulting from his belief that his supervisor had a personal vendetta against him. All the psychiatric evidence presented attributed his condition to his work environment and there was no evidence of stress outside the job that could have been a contributing cause of his condition. 675 P.2d at 161. The court affirmed the denial of benefits because it found he had imagined the vendetta. The court stated that a worker's misperception of reality that does not flow from any factual work condition is not recoverable. *Id.* at 170. "[O]n-the-job stress conditions causing the disorders must be real. That is, the events and conditions producing the stress must, from an objective standpoint, exist in reality." *Id.*

In the instant case, the A.L.J. found the alleged sexual harassment did not occur and found the disciplinary procedures to have been normally and appropriately implemented. She found that Stokes's perceptions of and reactions to these events were abnormal. She found that Stokes had failed to prove the legal causation prong of the *Allen* test and was therefore not entitled to compensation.

We find no error in the A.L.J.'s determination that Stokes presented insufficient evidence at the hearing to prove her injuries were work-related. Because she failed to establish legal causation, she is not entitled to workers' compensation benefits.

### FAULT AND PROXIMATE CAUSE

■ Stokes argues that the A.L.J. wrongly required her to prove fault and proximate cause. Proof of proximate cause and fault is not required in workers' compensation cases. *Large v. Industrial Comm'n,* 758 P.2d 954, 956 (Utah App. 1988). Nevertheless, we find Stokes's argument to be without merit. The record is void of any requirement imposed on Stokes by the A.L.J. to prove proximate cause or fault in this case. The A.L.J. did require Stokes to prove both legal and medical causation as required under *Allen,* and denied benefits based on lack of legal causation, regardless of fault of proximate cause.

### SEXUAL HARASSMENT FINDING

■ Stokes argues the A.L.J. acted outside her authority in finding the sexual harassment incidents did not occur. This argument is without merit. The alleged incidents are central to Stokes's claims. They comprise work-related events which Stokes claims caused her injuries. The A.L.J. had to determine whether they occurred in order to decide whether Stokes was entitled to compensation. *Allen v. Industrial Comm'n,* 729 P.2d 15, 18 (Utah 1986). The A.L.J. acted within her authority in finding the incidents did not occur.

### CONCLUSION

Stokes asserts other claims which we decline to address as they are without merit. *Gottfredson v. Utah State Retirement Bd.,* 808 P.2d 153, 154 n. 1 (Utah App.1991). For the reasons above, we conclude the A.L.J. properly denied benefits to Stokes, and affirm the Industrial Commission's order.

GARFF and RUSSON, JJ., concur.