CHEVRON U.S.A., INC.; and Amoco Oil Company, Petitioners,

v.

UTAH STATE TAX COMMISSION; Davis County; and Salt Lake County, Respondents.

No. 920546–CA.

Court of Appeals of Utah.

Jan. 29, 1993.

Rehearing Denied March 26, 1993.

Leonard J. Lewis and John W. Andrews, Salt Lake City, for petitioners.

Jan Graham and Brian L. Tarbet, Salt Lake City, for Utah State Tax Com'n.

Melvin C. Wilson, Gerald E. Hess, Farmington, David E. Yocum, Bill Thomas Peters, Salt Lake City, for Davis and Salt Lake Counties.

Before BENCH, GARFF, and RUSSON, JJ.

## OPINION

BENCH, Judge:

Petitioners, Chevron U.S.A., Inc, and Amoco Oil Company, seek review of separate, but congruent, rulings by the Utah State Tax Commission. In both cases, the Commission held that petitioners' refineries would be centrally assessed for purposes of their 1989 property taxes. The cases have been consolidated for purposes of our review. We reverse.

## BACKGROUND

The petitioners were notified by the Property Tax Division of the State Tax Commission that the 1989 property taxes on their refineries would be centrally assessed by the state rather than locally assessed by their respective counties.[1] Petitioners filed for redetermination with the Commission, which then conducted formal hearings. In both cases, the Commission

1. Amoco's refinery is located in Salt Lake County and Chevron's refinery is located in Davis County with a portion of Chevron's property crossing into Salt Lake County.

2. Subsection (d) has since been renumbered as (f). *See* section 59–2–201(1)(f) (1992).

3. The statutory definition of mines includes oil wells. See Utah Code Ann. § 59–2–102(14), (16) (1992).

4. Once it determined that the refineries were to be centrally assessed, the Commission then denied petitioners' requests that they receive the same 20% deduction granted to locally assessed properties. The petitioners also seek review of the Commission's denial of the 20% deduction in light of *Amax Magnesium Corp. v. State Tax Comm'n,* 796 P.2d 1256 (Utah 1990) (failure to grant centrally assessed property the same 20% deduction allowed locally assessed property is a

held that the refineries were subject to central assessment under Utah Code Ann. § 59–2–201(1)(d) (1989)[2] because they were "appurtenant to mines" (i.e. oil wells) that supplied the refineries with its crude oil.[3] The Commission also held in the alternative that Chevron's refinery was subject to central assessment under section 59–2–201(1)(a) because a portion of the property associated with the refinery crosses the county line between Salt Lake and Davis Counties.

Both petitioners claim that the Commission erroneously interpreted subsection (d). Chevron also claims that the Commission erroneously interpreted subsection (a).[4]

## STANDARD OF REVIEW

■ At issue in these cases are the Commission's statutory interpretations. Under Utah Code Ann. § 63–46b–16(4)(d) (1989), we may grant relief from agency action if "the agency has erroneously interpreted or applied the law."[5] We do not defer to an agency's statutory interpretation unless the legislature has explicitly, or implicitly, granted the agency discretion to interpret the statutory language at issue. *Morton Int'l, Inc. v. State Tax Commission,* 814 P.2d 581, 588–89 (Utah 1991).

■ There is no explicit statutory grant of discretion to the Commission to interpret subsections (a) and (d) because the legislature has not expressly directed the Com-

violation of the state constitutional requirement of equal and uniform taxation if the methods of assessment would result in similar valuations). Inasmuch as we hold that the subject properties should have been locally assessed, we need not reach this constitutional issue. *See State v. Anderson,* 701 P.2d 1099, 1103 (Utah 1985) (constitutional issues are not addressed if a case may be decided on other grounds).

5. In order to grant relief, we must also find that petitioners have been substantially prejudiced by the Commission's actions. Section 63–46b–16(4). The Commission's erroneous statutory interpretations substantially prejudiced the petitioners since under central assessment, petitioners are required to pay taxes on full value, whereas under local assessment they would be entitled to a 20% deduction.

mission to interpret any of the terms found therein by rule. *See Belnorth Petroleum Corp. v. State Tax Commission,* 845 P.2d 266, 268 (Utah App.1993) (an explicit grant of discretion occurs only when the legislature directs an agency to adopt rules interpreting a given term).[6] Nor is there an implicit grant of discretion because any question as to the legislature's intent can be resolved by resort to traditional rules of statutory construction, such as looking to the plain language of the statute. *See Morton,* 814 P.2d at 589; *Ferro v. Department of Commerce,* 828 P.2d 507, 510–11 (Utah App.1992) (there is no need for an agency to interpret a statute if it is clear and unambiguous; agency should simply apply the statute according to its plain language).[7] We therefore review the Commission's interpretations of subsections (a) and (d) under a correction-of-error standard.

## ANALYSIS
### Crossing County Lines

■ In its final decision, the Commission held that Chevron's refinery should be centrally assessed under subsection (a) because a portion of the property straddled the Salt Lake/Davis county line. Section 59–2–201 provides:

(1) [T]he following property shall be assessed by the commission at 100% of fair market value ...:

(a) all property which operates as a unit across county lines, if the values must be apportioned among more than one county or state;

Chevron correctly complains that the Division did not indicate in its initial determination that the refinery was being centrally assessed under subsection (a). Nor did it raise the applicability of subsection (a) in its briefs or arguments before the Commission. Consequently, Chevron was not aware of the Commission's intent to apply subsection (a) until it's ruling appeared in the final decision. Chevron therefore did not have any opportunity before the Commission to present evidence regarding subsection (a), or to argue its proper interpretation.

As asserted by Chevron on appeal, it was improper for the Commission sua sponte to raise and decide an issue that had not been raised by the parties. In *Combe v. Warren's Family Drive–Inns, Inc.,* 680 P.2d 733 (Utah 1984), the supreme court held that a trial court may not adjudicate matters not raised by the parties.

It is error to adjudicate issues not raised before or during trial and unsupported by the record. The trial court is not privileged to determine matters outside the issues of the case, and if he does, his findings will have no force or effect. In law or in equity, a judgment must be responsive to the issues framed by the pleadings, and a trial court has no authority to render a decision on issues not presented for determination. Any findings rendered outside the issues are a nullity.

*Id.* at 736 (citations omitted).

In a similar ruling, the supreme court recognized in *Girard v. Appleby,* 660 P.2d

---

6. *See, e.g.,* Utah Code Ann. § 7–3–19(4) (1988) ("The commissioner may, by rule or regulation, define the terms 'loans and extensions of credit' and 'person' as used in this section."); Utah Code Ann. § 26–6–3(b) (1989) ("The department shall, by rule, define persons who shall be considered 'partners' for purposes of this section."); Utah Code Ann. § 26–21–13.-5(3) (1989) ("The department has authority to define by rule 'small health care facility' for purposes of licensure under this section...."); Utah Code Ann. § 31A–20–107(5)(b) (1991) ("The commissioner shall define 'insignificant market share' by rule."); Utah Code Ann. § 59–12–104(16) (1987) ("For purposes of this subsection, the commission shall by rule define 'new or expanding operations' and 'estab-

lishment.'"). *Cf.* Utah Code Ann. § 63–46a–3(2), (3) (1989) (when rulemaking is required).

*Bhatia v. Department of Employment Sec.,* 834 P.2d 574, 581 n. 3 (Utah App.1992) (Bench, P.J., concurring).

7. This court recently noted when discussing the appropriate standard of review that the Commission has been expressly granted authority to administer the tax code. *See Putvin v. State Tax Comm'n,* 837 P.2d 589, 590 (Utah App.1992) (quoting Utah Code Ann. § 59–12–118 (1992)). We subsequently explained that this general grant of authority to administer the tax code should not be misconstrued as a grant of discretion to interpret given statutory terms. *See Belnorth,* 845 P.2d at 268 n. 5.

245 (Utah 1983), that even though a trial court may, in its discretion, reopen a case *when requested by a party,*

> no such discretion is afforded the court to reopen [a] case *sua sponte.* Preservation of the integrity of the adversarial system of conducting trials precludes the court from infringing upon counsel's role of advocacy. Counsel is entitled to control the presentation of evidence, and should there be a failure to present evidence on a claim at issue, it is generally viewed as a waiver.
>
> [T]he interests of justice are not enhanced when the court exceeds its role as arbiter by reaching out and deciding an issue that would otherwise be dead, it not having been litigated at the time of trial.

*Id.* at 247 (footnote omitted).

While it appears that this issue has not been expressly addressed with regard to a sua sponte decision rendered by an administrative tribunal (as compared to a trial court), the same policy considerations apply.[8] We therefore apply the same restrictions outlined in *Combe* and *Girard* to the Commission's sua sponte ruling in this case.

■ It is undisputed that the Division did not request in its pleadings that subsection (a) be invoked. Nor was subsection (a) ever an expressed or implied part of the Division's theory as to why the refinery should be centrally assessed. Only passing reference was made to the refinery's location by Chevron's property tax representative, Christopher Chambers, in response to a question by Chevron's legal counsel during the formal hearing.

> Counsel: Is it true, or is it not true, that historically up until the question was raised with respect to the 1989 filings,

that there had been a property tax assessment for the refinery at the local as distinguished from the central level?

> Chambers: Yes. During my experience with the refinery, prior to the state [action] in 1989, it had been assessed by both Davis and Salt Lake Counties.

> Counsel: And the refinery property lies, I take it from your last comment, partly in Salt Lake County, and partly in Davis County?

> Chambers: That's correct. The overwhelming majority is in Davis County, and [a] small portion in Salt Lake County.

This was the full extent of evidence relating to the location of the refinery and the manner in which it crossed county lines. Inasmuch as location arose only in passing as part of Chevron's presentation, subsection (a) clearly was not an implied part of the Division's theory of the case. Consequently, we hold that the Commission's decision with regard to subsection (a) was outside the issues presented for adjudication and is therefore a nullity.[9]

Because subsection (a) was not the expressed or implied theory presented by the Division to justify central assessment, we reverse the Commission's ruling that Chevron's refinery may be centrally assessed under subsection (a).

### Appurtenant to Mines

■ The Commission also found that both refineries are appurtenant to oil wells in which petitioners held proprietary interests and should therefore be centrally taxed under subsection (d). Subsection (d) provides for the central assessment of "all property or surface improvements upon or appurtenant to mines or mining claims." Section 59–2–201(1)(d) (1989). *See also*

8. Indeed, there would seem to be an even greater need for administrative tribunals to exercise restraint where the agency serves as both the tribunal and the prosecuting party appearing before the tribunal.

9. Besides being outside the issues presented, the Commission's findings under subsection (a) are inadequate. Central assessment under subsection (a) is permissible only if (1) the property

"operates as a unit," and (2) the value of the property "must be apportioned among more than one county." The Commission made no such findings in the instant case, but merely concluded that subsection (a) applied. *See Adams v. Board of Review of Industrial Comm'n,* 821 P.2d 1, 5–6 (Utah App.1991) (ultimate conclusions, without supporting findings, are arbitrary).

Utah Constitution, Art. XIII, § 11 and section 59–2–201(1)(e) (1992) (granting the Commission authority to centrally assess mines). The Commission, relying on the Utah Supreme Court's decision in *Amax Magnesium Corp. v. State Tax Comm'n,* 796 P.2d 1256 (Utah 1990), reasoned that the refinery was appurtenant to its wells because "the refinery and the oil fields are linked by pipeline and function as a unit with the refinery generally dependent upon the oil fields for the crude oil it refines." Petitioners assert that the appurtenant-property holding of *Amax* does not dictate the outcome of these cases and that the Commission's interpretation of subsection (d) is erroneous. We agree.

Amax obtained concentrated brine solution from the Great Salt Lake by means of evaporation ponds. The brine solution was then processed at Amax's plant to extract magnesium. When the division sought to centrally assess the plant, Amax asserted that its facility could not be centrally assessed because it was not a mine or a mining operation. The supreme court determined that the precise issue was whether the plant was appurtenant to a mine, and held:

> The integration of the plant and the evaporation ponds (mine) in the magnesium extracting process and the practical interpretation and literal wording of the statute make it clear that the Amax plant falls under the category of "all property or surface improvements upon or appurtenant to mines or mining claims."

*Id.* at 1258.

The forgoing quote evidences two distinct aspects of the supreme court's reasoning: (1) the processing plant and the mine (the evaporation ponds) were integrated, and (2) the integrated arrangement satisfied the practical interpretation and literal wording of the statute. While the Commis-

sion's ruling in the instant case addresses the first prong, it fails to address the second. We hold that because the arrangements in these cases do not satisfy the practical interpretation and literal wording of the statute, *Amax* does not dictate the outcome of these cases. Under the literal wording of the statute, neither refinery may be deemed appurtenant to a mine as a matter of law.

The legislature itself expressly defined what it meant by "appurtenant" in subsection (d).

> For purposes of assessment and taxation, all processing plants, mills, reduction works, and smelters which are primarily used by the owner of a mine or mining claim for processing, reducing, or smelting minerals taken from a mine or mining claim shall be considered appurtenant to that mine or mining claim, regardless of actual location.

Utah Code Ann. § 59–2–201(1)(d) (1989).

As is evident from the plain language of the statute, in order for a processing plant to be centrally assessed, it must be primarily used by the owner of a given mine to process the minerals taken from that mine. The ponds at issue in *Amax* were viewed by the supreme court to be a single mine. It therefore followed, under the literal terms of the statute, that the processing plant was deemed appurtenant to that mine.[10] The owner of a mine "exclusively used"[11] the facility for the processing of the minerals taken from that mine. Consequently, the plant was subject to central assessment.

In the present cases, however, the Commission did not determine that the refineries were appurtenant to single mines as required by subsection (d). Rather, the Commission found that each refinery func-

---

**10.** The supreme court considered a slightly different version of subsection (d) in *Amax.*

> For the purposes of taxation all mills, reduction works, and smelters used exclusively for the purpose of reducing or smelting the ores from a mine or mining claim by the owner thereof shall be deemed to be appurtenant to such mine or mining claim though the same is not upon such mine or mining claim.

Utah Code Ann. § 59–5–3 (Supp.1986).

**11.** The statute was subsequently altered to require that the facility only be "primarily used" by the owner of a mine rather than "exclusively used." *Compare* section 59–2–201(1)(d) (1989) with section 59–5–3 (Supp.1986).

tioned as a unit with its proprietary wells because they were linked by pipelines. In other words, the refineries were deemed appurtenant to all of the proprietary wells.

Petitioners argued before the Commission that the definition of appurtenant found in subsection (d) is written in the singular and therefore could not apply in these cases because there is no single mine to which either of the refineries could be deemed appurtenant. The Commission held in both cases:

> The Petitioner's argument that section 59-2-201(f) does not apply because part of the subsection is written in the singular rather than the plural is illogical and inconsistent when read in conjunction with the preceding sentence of that portion of the subsection. The preceding sentence states "... (f) All machinery used in mining, all property or surface improvements upon or appurtenant to *mines* or *mining claims*" (emphasis added). Clearly, that sentence when read with the sentence cited by the Petitioner does not demonstrate the legislative intent to require all mineral production to come from a single mine as the Petitioner argues and only a tortured reading of the subsection could render such a result.

We conclude that the Commission's interpretation of the statute is erroneous. The initial reference to "mines or mining claims" in the plural is nothing more than a recognition that there are a plurality of mines in the state and that property appurtenant to any one of those individual mines is to be centrally assessed. This general reference to *mines* in the plural does not alter the legislature's specific definition which unequivocally requires that a processing plant be linked primarily to a single mine in order to be deemed appurtenant.

The Commission did not find in either of these cases that the owner of a given mine was primarily using the refinery to process the crude oil from that mine. The Commission reasoned that subsection (d) applied simply because the owner of a refinery had integrated the refinery and its mines through a series of pipelines.[12] A refinery is not appurtenant to a multitude of mines simply because it refines their oil through an integrated system of transportation. Appurtenancy is more than mere integration. An appurtenance is defined as "[t]hat which belongs to something else; an adjunct, an appendage." Black's Law Dictionary 103 (6th ed. 1990). In order for a refinery to be appurtenant, it must be an appendage of a single mine. The mine must be the core property to which the refinery belongs. The Commission, however, never identified a core mine to which the refinery is an appendage. Rather, the Commission held that the refinery was appurtenant to a multitude of mines.

Since a refinery could not logically be an appendage to a multitude of mines at once, the Commission's holding that the refineries and the mines were integrated was, at best, a ruling that the mines are appendages of the refinery. The Commission, however, has no authority to assess a refinery and its "appurtenant" mines. It only has authority to assess a mine and its appurtenant property.[13]

---

**12.** The Commission's error arises primarily out of its focus on the petitioners as owners of the refinery rather than as owners of a mine.

**13.** The Commission's interpretation clearly defies the legislature's expressed intent. By ignoring the legislature's method for determining whether property is appurtenant, the Commission effectively rewrote, rather than followed, subsection (d). An agency is not free to alter statutory requirements under the guise of rendering an interpretation contrary to the very terms of the statute. *Ferro*, 828 P.2d at 513–14; *West Jordan v. Morrison*, 656 P.2d 445, 447 (Utah 1982) ("an 'administrative interpretation out of harmony and contrary to the express terms of a statute cannot be given weight'") (quoting *Utah Hotel Co. v. Industrial Comm'n*, 107 Utah 24, 32, 151 P.2d 467, 471 (1944)); *IML Freight, Inc. v. Ottosen*, 538 P.2d 296, 297 (Utah 1975) (agency may not "abridge, enlarge, extend, or modify the statute creating the right or imposing the duty").

If the Commission wishes to utilize a different method than that selected by the legislature for determining whether a refinery is deemed appurtenant to a mine, "it must seek a statutory amendment from the legislature." *Belnorth*, 845 P.2d at 271.

In accordance with the plain terms of the statute, we hold that a processing facility may only be centrally assessed if it is primarily used by the owner of a single mine to process the minerals from that mine.[14] The facility may then be deemed to be a part, or appendage, of that mine and subject to central assessment. Without a proper finding that a facility is appurtenant to a single mine, the Commission is without authority to centrally assess the facility. Inasmuch as the evidence is uncontroverted in these cases that petitioners' refineries were not used primarily by the owner of a single well to process the oil from that well, the Commission erred, as a matter of law, in centrally assessing the refineries.

## CONCLUSION

The Commission erred in interpreting subsection (a) and finding that Chevron's refinery was subject to central assessment as a property crossing county lines. The Commission also erred in interpreting subsection (d) and holding that it had the authority to centrally assess petitioners' refineries as properties appurtenant to a mine.

We therefore reverse the Commission's decisions in both cases.

GARFF, J., concurs.

RUSSON, J., concurs in the result.

**14.** In view of the way in which this case comes to us, we do not opine about the meaning of the statutory phrase "primarily used by the owner of a mine." Section 59–2–201(1)(d). The Commission erroneously held that subsection (d) applies if the owner of several interests in a multitude of wells "primarily uses" the refinery to process the combined crude oil from all of the wells. We have been presented with no arguments as to when the owner of a single well has "primarily used" the refinery to process the crude oil from that well. We therefore save this issue for another day when it is properly before us and fully briefed in light of today's holding.