**EMPLOYERS' REINSURANCE FUND, Petitioner,**

v.

**INDUSTRIAL COMMISSION OF UTAH; and Robert L. Seitz, Respondents.**

No. 920141–CA.

Court of Appeals of Utah.

June 18, 1993.

Erie V. Boorman, Salt Lake City, for petitioner.

Benjamin A. Sims, Salt Lake City, for respondent Indus. Com'n of Utah.

Virginius Dabney, Salt Lake City, for respondent Robert L. Seitz.

Before Judges BENCH, BILLINGS and RUSSON.

BENCH, Judge:

Employers' Reinsurance Fund petitions for review of the final order of the Industrial Commission granting lifetime permanent total disability benefits to Robert Seitz for an accident occurring in 1948. We affirm.

## FACTS

On July 28, 1948, Mr. Seitz was injured in a tragic industrial accident where his legs were severed several inches above the knees. Mr. Seitz was off work for approximately eight months while undergoing extensive medical treatment.

On August 27, 1948, the Industrial Commission entered an order, finding that:

Robert Seitz ... was injured by accident arising out of or in the course of his employment by the Utah Fuel Company on July 28, 1948, in which he sustained the loss of both legs above the knees, thereby suffering permanent total disability; it further appearing that Robert Seitz is entitled to the maximum amount of $8,500.00 for permanent total disability covering the loss of both legs, as provided by Section 42-1-63, Utah Code Annotated 1943, as amended 1945.

The Commission then ordered that Mr. Seitz's employer pay him workers' compensation "until the amount of $8,500 has been paid." In the ensuing years, Mr. Seitz's employer paid the entire $8,500. Mr. Seitz returned to work as a dispatcher and retired in 1976.

In July 1990, Mr. Seitz submitted to the Industrial Commission an application wherein he sought additional workers' compensation benefits. Mr. Seitz alleged that he was owed additional benefits from the Employers' Reinsurance Fund (the Fund) due to amendments to the Workers' Compensation Act. An administrative law judge (ALJ), heard the application for addi-

tional benefits. The ALJ ruled that when the Workers' Compensation Act was amended in 1977, the legislature "specifically intended to include [Mr. Seitz] and others similarly situated on the Employers Reinsurance Fund ... permanent total disability payroll." The ALJ further stated that "to take the approach urged by the [Fund], the applicant would have only been entitled to receive $8,500.00 for the statutory permanent total disability sustained as the result of the industrial accident, and no other benefits." The ALJ pointed to the 1977 amendment as evidence of the legislature's intent to "correct an injustice and insure[ ] that all permanent total disability claimants would be treated equally, especially considering that workers compensation is [Mr. Seitz's] exclusive remedy for his tragic injury."

The Fund filed a motion for review with the Industrial Commission. The Commission upheld the ALJ's Order, ruling that the 1977 amendment of the Workers' Compensation Act evidenced the legislature's intent to "include [Mr. Seitz] and others similarly situated on the Employers' Reinsurance Fund/'special fund' permanent total disability payroll." The Commission's order then required the Fund to add Mr. Seitz to the permanent total disability payroll, effective as of May 10, 1977. The Commission further ordered that Mr. Seitz be paid the accrued amount in a lump sum, including interest at 8% per annum. This petition for review followed.

## STANDARD OF REVIEW

At issue in this case is the Industrial Commission's interpretation of specific language in the Workers' Compensation Act and various amendments to the Act beginning in 1945.[1] Under Utah Code Ann. § 63-46b-16(4)(d) (1989), we may grant relief from an agency action if the agency

---

1. This case does not involve the Commission's application of the law, only its interpretation. With the exception of *Morton,* an interpretation case, the concurring opinion cites only cases involving our review of an agency's application of the law. It thereby fails to distinguish between the act of interpreting the law, i.e., deter-

mining what the law means, and the act of applying the law to the facts of a given case, i.e., adjudicating the rights and obligations of the parties. Correspondingly, it fails to recognize that a grant of discretion to interpret the law is quite different from a grant of discretion to apply the law.

"has erroneously interpreted or applied the law." *See Belnorth Petroleum v. State Tax Commission*, 845 P.2d 266, 268 (Utah App.), *cert. filed*, No. 930068–SC (Utah Feb. 11, 1993). "We review statutory interpretations by agencies for correctness, giving no deference to the agency's interpretation, unless the statute grants to the agency the discretion to interpret the statute." *Ferro v. Department of Commerce*, 828 P.2d 507, 510 (Utah App.1992) (citing *Morton Int'l, Inc. v. State Tax Comm'n*, 814 P.2d 581, 588 (Utah 1991)).[2]

■ A legislative grant of discretion to an agency to interpret a statute may be either explicit or implicit. *Morton*, 814 P.2d at 589; *accord Chevron v. State Tax Comm'n*, 847 P.2d 418, 419 (Utah App. 1993); *Belnorth*, 845 P.2d at 268; *Ferro*, 828 P.2d at 510. An explicit statutory grant of discretion to an agency only occurs when the legislature directs the agency to interpret a given statutory term by rule. *Chevron*, 847 P.2d at 419–20; *accord Belnorth*, 845 P.2d at 268.[3] There is no explicit statutory grant of discretion to the Commission to interpret the statutory language in question.

■ In the absence of an explicit grant of discretion, we look to see whether the statutory language implicitly grants the agency discretion to interpret the law. To determine whether there has been an implicit grant of discretion, we first must determine whether the statutory language in question is ambiguous. *Ferro*, 828 P.2d at 510 (if a statute is ambiguous, there may be an implicit grant of discretion). In *Ferro*, this court clarified the proper method of

---

**2.** In disagreeing with this statement of the standard of review, the concurring opinion relies heavily on *King v. Industrial Commission*, 850 P.2d 1281 (Utah App.1993). The standard of review discussion in *King*, however, is mere dicta as correctly pointed out by Judge Russon in his concurring opinion in *King*. 850 P.2d at 1296–97 (Russon, A.P.J., concurring). The concurring opinion in the present case also relies upon a lengthy list of cases, all of which involve challenges to an agency's application of the law and none of which involve a challenge to an agency's interpretation of the law. Furthermore, the concurring opinion's approach is highly reminiscent of the analysis followed in *Pro–Benefit Staffing, Inc. v. Board of Review of the Industrial Commission*, 775 P.2d 439, 441–42 (Utah App.1989), which the supreme court has expressly declared is "inconsistent with the analysis expressed in [*Morton*]." *Morton*, 814 P.2d at 584 n. 6. A discriminating review of the concurring opinion's approach reveals that it is contrary to *Morton*, has never been followed, and is itself dicta. No Utah court has actually held an explicit grant of discretion to apply the law to be a grant of discretion to interpret the law, and the concurring opinion does not do so today.

**3.** Despite the previous holdings of this court in *Chevron* and *Belnorth*, which is the controlling law in this case, the concurring opinion takes analytical exception to the narrowness of this test because it does not allow for a grant of discretion to apply the law to be treated as a grant of discretion to interpret the law. One cannot logically conclude, however, that just because the legislature grants an agency discretion to apply the law as an adjudicative tribunal, it also intended that reviewing courts defer to the agency's interpretation of the law applied. It is perfectly logical for the legislature to expect a reviewing court to defer to an agency's adjudication of ultimate facts without also expecting the reviewing court to defer to the agency's interpretation of the law that it applied in reaching those ultimate facts.

The concurring opinion erroneously asserts that a legislative grant of discretion to make factual findings required by statute, such as whether an employer had "just cause" to dismiss an employee, also constitutes an explicit grant of discretion to interpret the term "just cause" without correction from a reviewing court. If followed to its logical conclusion, this assertion would preclude reviewing courts from ever utilizing a correction-of-error standard to review an agency's interpretation of a statute. Every agency decision we review under UAPA necessarily involves an express statutory grant of discretion to the agency to apply the law at issue. *See, e.g., Putvin v. State Tax Comm'n*, 837 P.2d 589, 590 (Utah App.1992) (deferring because "legislature has granted the Commission discretion in administration of the tax code generally"). Likewise, in every case we review, the agency has necessarily interpreted the law in order to apply it. The question is not whether the agency may interpret or apply the law, for that is always the case. The question is whether we, as a reviewing court, must defer to the agency's interpretation. The concurring opinion's overly deferential approach may erroneously cause a reviewing court to defer to an agency's interpretation of the law, even though that interpretation is at odds with the legislature's intended interpretation. *See Belnorth*, 845 P.2d at 268–69 n. 5; *Ferro*, 828 P.2d at 514 n. 12.

determining whether there is an implicit grant of discretion:

> If a statute is ambiguous, ... we apply traditional rules of statutory construction under the assumption that the Legislature was operating under such rules. We also assume that the Legislature expected the agency to likewise apply the traditional rules of statutory interpretation. No deference is therefore given to the agency's interpretation if an otherwise ambiguous statute may be interpreted in accordance with traditional rules of interpretation. *See Morton* at 589.
>
> If, however, a traditional analysis of the statute does not resolve the ambiguities and "there is no discernable legislative intent concerning a specific issue[,] the Legislature has, in effect, left the issue unresolved. In such a case, it is appropriate to conclude that the Legislature has delegated authority to the agency to decide the issue." *Id.* We assume that the Legislature expected the agency to use its expertise in choosing between the possible permissive interpretations. *Id.* The choice of interpretations in such cases is therefore viewed as a policy decision by the agency to which we give deference. *Id.*

*Ferro*, 828 P.2d at 510-11.[4]

■ In the present case, the statutory language, when considered in light of the remainder of the Act and the legislative history, is ambiguous. *See Stevensen v. Monson*, 856 P.2d 355, 357 (Utah App.), *cert. filed*, No. 930211-SC (Utah May 5, 1993) (plain meaning governs unless the Act "considered *in para materia* with other acts, or with the legislative history of the subject matter, imports a different meaning.") (quoting Sutherland Statutory Construction § 46.01 (5th ed. 1992). Since we can resolve the ambiguity by applying traditional rules of statutory construction, there is no grant of implicit discretion to the agency. We therefore apply a correction-of-error standard to the Commission's interpretation. *See Ferro*, 828 P.2d at 510.

## STATUTORY BACKGROUND

Since the Workers' Compensation Act and its various amendments since 1945 are critical to our analysis we briefly review its history relevant to the case before us.

Prior to 1945, individuals who were permanently and totally disabled on the job were entitled to lifetime benefits paid by their employer. *See* 1939 Utah Laws ch. 51, § 1. In 1945, the Act was amended and lifetime benefits were replaced with maximum benefits to be paid by the employer. The 1945 version of the Act, which was in force when Mr. Seitz was injured, expressly limited the employer's liability to $8,500. It provided, in pertinent part:

> In cases of permanent total disability, the award shall be 60 per cent of the average weekly wages for five years from date of injury, and thereafter 45 per cent of such average weekly wages but not to exceed a maximum of $22.50 per week, plus 5 per cent of such award for each dependant minor child under the age of eighteen years, up to a maximum of five such dependant minor children,

---

4. *King*, 850 P.2d at 1290, curiously suggests that we only resort to the rules of statutory construction when the statutory language is clear and unambiguous. Where language is clear and unambiguous, however, there is no logical need to resort to the rules of statutory construction. *Ferro*, 828 P.2d at 510 (if statute is unambiguous, "[t]he agency simply applies the statute according to its plain language"). *King* further implies that we may find an implicit grant of discretion simply because statutory language is "broad and expansive." 850 P.2d at 1289. *King* mistakenly draws the "broad and generalized language" test from the supreme court's rehearsal of pre-UAPA cases. *See Morton*, 814 P.2d at 588. *Morton*, however, did not adopt the former "broad and generalized language" test as the standard of review under UAPA. *See id.* at 588, and n. 39 ("the legislative history of [UAPA] suggests that the legislature intended to alter the approach the courts developed to review agency action").

While it appears that *King* erred in resorting to outdated analysis by diminishing the importance of applying the rules of statutory construction as directed in *Morton*, the concurring opinion today has clarified these puzzling passages. It reaffirms the supremacy of legislative intent over administrative interpretation by recognizing that the rules of statutory construction must be applied before we may find an implicit grant of discretion to interpret the law.

and not less than $10.00 per week, *provided, however,* that in no case of permanent total disability shall more than $8,500.00 be required to be paid. The loss, or permanent and complete loss of use, of both hands or both arms, or both feet or both legs, or both eyes, or of any two thereof, shall constitute total and permanent disability, to be compensated according to the provisions of this section.

1945 Utah Laws ch. 65, § 1.

In 1949, the legislature amended the Act and restored lifetime benefits to permanently and totally disabled employees. *See* 1949 Utah Laws ch. 52, § 1. The amendment retained the limitation on the employers' liability and provided that the Fund (then called the "special fund") pay lifetime benefits once the employer or the employer's insurance company had paid the maximum amount the employer was required by law to pay.

In 1971, the legislature amended the Act to provide as follows:

> Commencing July 1, 1971, all persons who are permanently and totally disabled and now receiving compensation benefits from the special fund provided for by Section 35–1–68 shall be paid compensation benefits at the rate of $44 per week. This section shall apply to all persons permanently and totally disabled who are now receiving or hereafter become entitled to receive compensation benefits from the special fund.

1971 Utah Laws ch. 76, § 6. The plain language of the amendment increased the dollar amount of the benefits for permanently and totally disabled persons who were receiving benefits from the special fund at the time of the amendment.

In 1974, the legislature again amended the Act to provide as follows:

> Commencing July 1, 1974, all persons who were permanently and totally disabled on or before March 5, 1949, and were receiving compensation benefits and continue to receive such benefits from the special fund provided for by section 35–1–68(1) at a rate sufficient to

bring their weekly benefit to $50 when combined with employer or insurance carrier compensation payments.

1974 Utah Laws ch. 13, § 1. This amendment increased the weekly benefit for individuals who were permanently and totally disabled prior to March 5, 1949, and who were receiving and continued to receive benefits from the special fund.

In 1977, the legislature again amended the Act. The language of the 1977 amendment was the subject of the Commission's interpretation when it granted benefits to Mr. Seitz. It provided in pertinent part:

> [A]ll persons who are permanently and totally disabled and entitled to benefits from the [Fund] including those injured prior to March 6, 1949, shall receive not less than $75 per week when paid only by the [Fund], or when combined with compensation payments of the employer or the insurance carrier.

1977 Utah Laws ch. 156, § 6. According to its plain meaning, this amendment, like the 1974 amendment, increased benefits for individuals who "are permanently and totally disabled *and* entitled to benefits from the special fund...." (Emphasis added.)

## ANALYSIS

■ Mr. Seitz is indisputably permanently and totally disabled. The question presented is whether he ever was entitled to receive benefits from the Fund. The Commission interpreted the 1977 amendment as conferring new lifetime benefits on Mr. Seitz and others similarly situated. The Fund claims that none of the various amendments conferred upon Mr. Seitz, and others similarly situated, an entitlement to benefits from the Fund. While each interpretation has some plausibility, neither is the correct interpretation.

Since the Act and its various amendments are subject to several plausible interpretations, we apply the rules of statutory construction to determine legislative intent. *See Morton,* 814 P.2d at 589. Our primary duty in interpreting legislation is to give effect to the intent of the legislature. *West Jordan v. Morrison,* 656 P.2d 445, 446 (Utah 1982). We have a fundamental

duty to give effect, if possible, to every word in the statute. *Provo City Corp. v. State*, 795 P.2d 1120, 1123 (Utah 1990). "In the process of interpretation, the courts may not take, strike, or read anything out of a statute or delete, subtract, or omit anything therefrom." *Chris & Dick's Lumber and Hardware v. State Tax Comm'n.*, 791 P.2d 511, 516 (Utah 1990).

The 1977 amendment increased benefits for individuals injured prior to March 6, 1949, who were entitled to receive compensation benefits from the Fund and continued to receive such benefits. The Fund argues that no individuals permanently and totally disabled between 1945 and 1949 were ever entitled to receive benefits from the special fund. Under that interpretation, the reference in the 1977 amendment to individuals injured prior to March 6, 1949, would be rendered meaningless.

The correct determination of Mr. Seitz's entitlement to benefits is found in the language of the 1949 amendment. The 1949 amendment stated in pertinent part:

In cases of permanent total disability the award shall be 60% of the average weekly wages for five years from date of injury, and thereafter 45% of such average weekly wages, but not to exceed a maximum of $25.00 per week and not less than $15.00 per week, plus 5% of such award for each dependant minor child under the age of 18 years up to a maximum of 5 such dependent minor children; *provided however*, that in no case of permanent total disability shall the employer or its insurance carrier be required to pay more than $11,000.00.

.... If and when the division of vocational rehabilitation under the state board of education certifies to the industrial commission of Utah in writing that such employee has fully cooperated with the division of vocational rehabilitation in its efforts to rehabilitate him, and in the opinion of the division the employee may not be rehabilitated, then the commission shall order that there be paid to such

employee weekly benefits at the rate of 45% of his average weekly earnings, but not to exceed $25.00 per week, out of [the Fund], for such period of time beginning with the time that the payments (as in this section provided) to be made by the employer or its insurance carrier terminated and ending with the death of the employee.

1949 Utah Laws ch. 52 § 1.

Unless this amendment was a mere clarification of prior law, the amendment is endowed with the presumption that it was intended to change existing legal rights. *Madsen v. Borthick*, 769 P.2d 245, 252 n. 11 (Utah 1989); Sutherland Statutory Construction § 22.30 (5th ed. 1985). Significantly, the 1949 amendment added a new lifetime benefit, or legal right, for employees permanently and totally disabled regardless of when the disabling injury occurred. The amendment required that the employee be paid benefits from the special fund from the time the employer or employer's insurance company paid its maximum amount required by law, and ending with the death of the employee. Thus, as a result of the 1949 amendment, individuals in Mr. Seitz's position were entitled to have their employers pay the maximum amount required by the law in force at the time of the injury,[5] after which they became entitled to lifetime benefits from the special fund. We emphasize that this is not a retroactive application of the amendment. Rather, the legislature added new benefits or legal rights for persons permanently and totally disabled which vested when the employer's benefits ended, regardless of when the injury occurred. Seitz was entitled to benefits from his employer until well after the amendment was adopted, at which time he became entitled to compensation from the Fund.

When the 1977 amendment is read in the context of this background, it is clear that it did not add a new benefit or legal right. The 1977 amendment states that "[a]ll persons who are permanently and totally dis-

---

5. Under the Workers' Compensation Act, an employer is entitled to have its obligations determined by the law in effect at the time of the employee's injury. *Okland Construction Co. v. Industrial Commission*, 520 P.2d 208, 210 (Utah 1974).

abled and entitled to benefits from the special fund including those injured prior to March 6, 1949" shall have their weekly benefit increased. 1977 Utah Laws ch. 150, § 1. Since Mr. Seitz was entitled by virtue of the 1949 amendment to receive lifetime benefits from the special fund, the subsequent amendments did in fact increase Mr. Seitz's lifetime benefits.

## CONCLUSION

The 1949 amendment to the Workers' Compensation Act conferred upon Mr. Seitz, and others similarly situated, lifetime benefits to be paid by the Fund when the employer or employer's insurance company had paid the maximum amount required by law. We therefore affirm the Commission's order granting lifetime benefits to Mr. Seitz.[6]

BILLINGS, Presiding Judge (concurring in the result):

Judge Russon and I concur in the result. I write separately to articulate the holding of the court on the analysis of the standard of review.

## STANDARD OF REVIEW

We agree with the main opinion's statement there is "no explicit statutory grant of discretion to the Commission to interpret the statutory language in question." However, as noted in *King v. Industrial Commission*, 850 P.2d 1281 (Utah App.1993), the term explicit grant of discretion should be viewed more broadly. We believe that view is both mandated by *Morton International, Inc. v. Auditing Division*, 814 P.2d 581 (Utah 1991), and supported by cases from this court. *See King*, 850 P.2d at 1286–91. As set forth in *King*, the analysis requires the court to first

determine whether the legislature explicitly granted discretion to the agency to interpret or apply statutory language at

issue. As Judge Bench has rightly noted, we can find an explicit grant of discretion in specific statutory language directing the agency to define a statutory term by regulation. Additionally, a statute directing the agency to *interpret or apply specific statutory language* should be interpreted as an explicit grant of discretion. If we find such a grant, we review under section 63–46b–16(4)(h)(i) for abuse of discretion. That is, we afford the agency some deference and assess whether its action is within the bounds of reasonableness.

*Id.* at 1291 (emphasis added). Judge Bench apparently misunderstands what is meant by applying specific statutory language. We do not refer to the general act of applying the facts to the law. As he correctly notes, that is done in every case. Rather, as *King* attempted to demonstrate, we refer to specific statutory directives regarding application of particular statutory terms. For example, in *Department of Air Force v. Swider*, 824 P.2d 448 (Utah App.1991), this court found statutory language permitting a denial of benefits if a termination was for "just cause ... *if so found by the commission*" constituted the requisite grant of discretion for us to review the Industrial Commission's determination of just cause under an abuse of discretion standard. *Id.* at 451. Many other cases have used this analysis. *See Albertsons, Inc. v. Department of Employment Sec.*, 854 P.2d 570, 573 (Utah App. 1993); *Gibson v. Department of Employment Sec.*, 840 P.2d 780, 783 (Utah App. 1992); *Bhatia v. Department of Employment Sec.*, 834 P.2d 574, 577 (Utah App. 1992); *Robinson v. Department of Employment Sec.*, 827 P.2d 250, 252 (Utah App.1992); *Wagstaff v. Department of Employment Sec.*, 826 P.2d 1069, 1072 (Utah App.1992); *Tasters Ltd. v. Department of Employment Sec.*, 819 P.2d 361, 364 (Utah App.1991).

---

**6.** Inasmuch as the correct interpretation of the Act and its various amendments demonstrates that Mr. Seitz was entitled to lifetime benefits since 1949, we note that the Commission erred in determining that Mr. Seitz first became entitled to lifetime benefits in 1977. However, Mr.

Seitz has not challenged the Commission's determination of when he became eligible for lifetime benefits. We, therefore, do not disturb the Commission's order awarding benefits from 1977 on.

We agree with Judge Bench that there are two kinds of explicit grants of discretion, discretion to interpret statutory language and discretion to apply statutory language. It is his vigorous effort to build an impenetrable wall between the two with which we differ. Such an analysis is needlessly mechanistic and does not follow the direction of our supreme court. *See Morton*, 814 P.2d at 589, 592 (not differentiating between "statutory construction or application" in applying analysis). *See also Uintah Oil Assoc. v. County Bd. of Equalization*, 853 P.2d 894, 896 (Utah 1993) (finding discretion on basis of agency expertise because it indicates either "an explicit or implicit grant of discretion" and reviewing for abuse of discretion based on "interpretation or application" of a statutory term). When the legislature focuses on a specific statutory term and delegates to the agency the duty to either interpret or apply the term, i.e. its charge to the commission to find "just cause", the agency necessarily is required to interpret the statutory language. Thus, an agency's acts pursuant to such a statutory directive should be reviewed for reasonableness.

The cases we cite follow the example given in *Morton* regarding an explicit grant of discretion to an agency. The *Morton* example relates to the Tax Commission deciding whether a piece of equipment qualifies for an exemption from the sales and use tax. *Morton*, 814 P.2d at 588 n. 40. The statute allows the exemption if the equipment is a "normal operating replacement ... *as determined by the commission.*" Utah Code Ann. § 59–12–104(15) (1992) (emphasis added). This statutory directive requires the Tax Commission to interpret and apply a particular statutory term. The main opinion attempts to draw a distinction between the operative impact of the statutory language in *Morton* and that in the other cases we cite. We believe there is no basis for such a distinction. In the case we resolve today there is no statutory directive to interpret or apply the specific language in question.

The main opinion also asserts, as a proposition of cause and effect, because we can

resolve ambiguity in the statute by traditional rules of statutory construction there is no implicit grant of discretion. As noted in *King*, we do not agree with the strict linearity of that analysis. However, there is no significant difference between the implicit grant analysis articulated in the main opinion and the one we reaffirm today. As noted in *King*, "statutory construction is used as a tool in ascertaining whether an implicit grant of discretion exists." *King*, 850 P.2d at 1290. Thus, *King* expressly recognizes the requirement that statutory construction be applied when assessing the issue of an implicit grant.

Rephrasing the analysis set forth in *King* demonstrates the only distinction between what we hold today is proper and what Judge Bench advocates is that the court's analysis is articulated in slightly less constrictive terms. If examination of the statute and the statutory framework using the rules of statutory interpretation or in the light of its legislative history provides us with a clear legislative intent, we will not defer to the agency. If, on the other hand, the language is broad and expansive without a clear legislative intent or subject to numerous permissible interpretations which cannot be resolved by normal rules of statutory construction, we will defer to the agency. This is because it is "particularly appropriate" to defer to the agency's knowledge and experience concerning the wisdom of a specific policy in cases where legislative intent is not clear. *Morton*, 814 P.2d at 589.

Because we believe the main opinion correctly applies the rules of statutory construction and finds the one permissible interpretation of the statute in question, we concur in the result.

RUSSON, J., concurs.