Jack W. **PICKETT** and Servus Drug Co., Petitioners,

v.

**UTAH DEPARTMENT OF COMMERCE, DIVISION OF OCCUPATIONAL AND PROFESSIONAL LICENSING,** Respondent.

No. 920556–CA.

Court of Appeals of Utah.

Aug. 3, 1993.

---

**4.** The claims against Sutton and ILGC were re- solved pursuant to a stipulation agreement.

George K. Fadel (argued), Bountiful, for petitioner

Jan C. Graham, State Atty. Gen., and Robert E. Steed (argued), Asst. Atty. Gen., Fair Business Enforcement Div., Salt Lake City, for respondent

Before GARFF, GREENWOOD and ORME, JJ.

GREENWOOD, Judge:

Petitioners Jack W. Pickett and Servus Drug Co. seek review of an order of the Division of Occupational and Professional Licensing (the Division) revoking Pickett's license to dispense controlled substances. We remand for modification of the penalty imposed on Pickett.

## FACTS

The basic facts of this case are not disputed. At the time of the proceedings before the Division, Pickett was licensed to practice as a pharmacist and to dispense controlled substances in the State of Utah. Servus Drug Co. (Servus), Pickett's employer, was licensed as a pharmacy and a dispensary for controlled substances in the State of Utah.

On twelve occasions between May 20, 1991 and July 30, 1991, Pickett dispensed various dosages of Tranxene, a Schedule IV controlled substance; Esgic, a Schedule III controlled substance; and Soma, a legend drug,[1] to one of his long-time customers. Pickett did not seek authorization from his customer's physician until after he had dispensed the medication, and on occasion he dispensed the medication in either unmarked prescription bottles or a paper bag without labels or instructions.

On January 28, 1992, the Division issued a Notice of Agency Action commencing formal adjudicative proceedings against Pickett. The notice stated that Pickett was entitled to a hearing and that the presiding officer would be J. Steven Eklund, an administrative law judge (ALJ) with the Department of Commerce.

The hearing was conducted on May 26, 1992 before the ALJ and two members of the State Board of Pharmacy (the Board).[2] David E. Robinson, Director of the Division, was also present.[3] After Pickett's counsel, the Division's counsel, the ALJ and one Board member finished questioning Pickett, Robinson proceeded to aggressively question him in an attempt to more fully investigate the facts and to ascertain whether Pickett appreciated the "serious nature" of his actions. Pickett testified that there were old prescriptions on record for all of the drugs dispensed, but because of his familiarity with this particular customer he had become lax and often sought the physician's authorization for dispensing the medication only after the fact. In addition, Pickett testified he did not detect anything unusual in the customer's drug use patterns, and was unaware that the customer was drug dependent.

---

1. A legend drug has "a statement on the label of a drug product indicating that federal law prohibits the druggist from dispensing it except on the prescription of a physician." *Webster's Third New International Dictionary* 1291 (1986).

2. Utah Code Ann. § 58–1–7(2) (1990) requires the presence of a quorum of the Board for authorized Board action. Pickett expressly waived this requirement, and consented to a hearing before only two of the five members of the Board. The parties dispute whether the waiver was for purposes of the hearing only or for the decision making process as well.

3. Adjudicative hearings are conducted under the direction of a "presiding officer," who may be the director or an individual or body of individuals designated by the director. Utah Code Ann. § 63–46b–2(1)(h)(i) (1989). The agency may substitute one presiding officer for another during any proceeding if fairness to the parties is not compromised. Utah Code Ann. § 63–46b–2(1)(h)(ii) (1989). It is clear the ALJ was designated as the presiding officer at Pickett's hearing. Robinson's status at the hearing is less clear but is problematic, as hereafter noted.

In unsigned Findings of Fact, Conclusions of Law and Recommended Order, the Board found that Pickett had improperly dispensed medication on twelve occasions. However, in mitigation, the Board also found that there was insufficient evidence to prove that Pickett had made false or forged prescriptions, that Pickett knew his customer was drug dependent, or that Pickett had ever improperly dispensed controlled substances or other medications to other individuals.

The Board concluded that Pickett's misconduct represented "an egregious departure from those standards which govern his profession," and that he was "grossly negligent in his practice of pharmacy." Therefore, as an "appropriately severe sanction ... [and] to appropriately protect the public health, safety and welfare" the Board recommended revoking Pickett's license to dispense controlled substances, and placing his license as a pharmacist on probation for three years.[4] The Director, Robinson, adopted the Board's recommended Order, and, on appeal, the Executive Director of the Department of Commerce upheld the Order. Pickett then filed this appeal.

## ANALYSIS

■ In his petition for review to this court, Pickett challenges the decision to revoke his license to dispense controlled substances because of the inconsistency of this penalty with alleged precedent imposing more lenient penalties for similar or more egregious misconduct. In addition, Pickett claims he was denied due process of law at his administrative hearing, and that procedural errors justified reversal of the Division's decision.[5]

Because this case commenced after January 1, 1988, it is governed by the Utah Administrative Procedures Act (UAPA). Utah Code Ann. §§ 63–46b–0.5 to –22 (1989 and Supp.1992). Section 63–46b–16(4) of UAPA states that the appellate court shall grant relief from final agency action only if the individual requesting judicial review has been "substantially prejudiced" by certain enumerated conditions. In this case, Pickett claims that relief should be granted under section 16(4)(h)(iii), referring to agency action which is "contrary to the agency's prior practice, unless the agency justifies the inconsistency by giving facts and reasons that demonstrate a fair and rational basis for the inconsistency."[6] Pickett argues both that the agency action is "contrary to the agency's prior practice"[7] and that the agency has not met its burden of "justif[ying] the inconsistency by giving facts and reasons that demonstrate a fair

---

**4.** The Board concluded that there was no basis for disciplinary sanction with respect to the license of Servus as a pharmacy or a dispensary of controlled substances.

**5.** Pickett claims he was denied due process of law because the presence of Robinson at the hearing improperly influenced the proceedings and because Robinson acted more as an advocate than as an impartial tribunal. In addition, Pickett argues that the executive director's review of the director's order amounts to "a decision maker evaluating his own prior decisions." With respect to alleged procedural errors, Pickett points out the absence of signatures by either the ALJ or the Board on the Findings of Fact, Conclusions of Law and Recommended Order, and the fact that the State Board of Pharmacy did not officially concur with the findings as required by Utah Code Ann. § 58–1–16 (1990). While we have reservations concerning the propriety of Robinson's role in the hearing, we will not reach this issue or the alleged procedural errors, because Pickett made no objections during the proceedings below and thus failed to preserve them on appeal. *Brinkerhoff v.*

*Schwendiman,* 790 P.2d 587, 589 (Utah App. 1990).

**6.** Pickett also claims he is entitled to relief under Utah Code Ann. § 63–46b–16(4)(h)(iv) because the division's action was "arbitrary and capricious." Because we grant relief based upon § 63–46b–16(4)(iii), it is not necessary to address this issue.

**7.** In addition to the statutory requirement of consistency, the Utah Supreme Court has noted the applicability of stare decisis in formal administrative proceedings. *Salt Lake Citizens Congress v. Mountain States Tel.,* 846 P.2d 1245, 1251–53 (Utah 1992). "Administrative agencies, like courts, have authority to establish rules of law, and they do so in two ways: by promulgating rules and by issuing decisions as a necessary incidence of adjudication." *Id. See also* 4 Davis, *Administrative Law Treatise,* § 20.9 at 31 (noting agencies make rules of law through adjudication).

and rational basis for the inconsistency." Utah Code Ann. § 63–46b–16(4)(h)(iii).

 Pickett's claims require this court to interpret the language of section 16(4)(h)(iii) and to determine the nature and scope of both Pickett's and the State's burden of proof under the statutory provision. If statutory "language is unambiguous and we can interpret and apply the statutory language by the traditional methods of statutory construction, ... we review the agency action ... for correction of error" as specified in section 63–46b–16(4)(d). *King v. Industrial Comm'n*, 850 P.2d 1281, 1291 (Utah App.1993). *See also Employers' Reinsurance v. Industrial Comm'n*, 856 P.2d 648, 650 (Utah App. 1993) (citing *Ferro v. Department of Commerce*, 828 P.2d 507, 510 (Utah App.1992).[8] According to traditional statutory interpretation methods, we look to the plain meaning of unambiguous statutory language. *Bonham v. Morgan*, 788 P.2d 497, 500 (Utah 1989) (per curiam); *Hatton–Ward v. Salt Lake City Corp.*, 828 P.2d 1071, 1072 (Utah App.), *cert. denied*, 843 P.2d 1042 (Utah 1992).

 Applying traditional statutory interpretation methods, we conclude that the statutory language at issue clearly and unambiguously requires consistency of agency action in the absence of an adequate rationale for departure from prior action. The language is mandatory and includes neither exceptions nor latitude for evading its requirements.

In a dissenting opinion to *SEMECO v. Utah State Tax Comm'n*, 849 P.2d 1167, 1174 (Utah 1993), Justice Durham further analyzed the relevant statutory language and the parties' relative burdens of proof, as follows:

> Part (iii) of subsection (4)(h) permits relief for agency action that is "contrary to the agency's prior practice." This provision also demands reasonableness and rationality review, explicitly permitting the inconsistency if the agency can "demonstrate a fair and rational basis" for it. *This explicit standard of review apparently shifts the burden of persuasion,* however; it requires the agency to demonstrate the reasonableness and rationality of its departure, while in the typical challenge to agency action, the party challenging the action carries the burden of demonstrating its impropriety.

 We agree with Justice Durham's analysis[9] that this section requires a petitioner to establish as a prima facie case that the administrative agency's action in his or her case was "contrary to the agency's prior practice." If a petitioner meets this burden, section 16(4)(h)(iii) unambiguously requires that "the agency justif[y] the inconsistency" with prior decisions. Therefore, as noted by Justice Durham, establishing this prima facie case by a preponderance of the evidence shifts the burden to the agency to "demonstrate a fair and rational" basis for the departure from precedent in the instant case. If the agency then sets forth its rationale for deviation from its own precedent or an explanation to demonstrate consistency, our review of the explanation will be on the basis of "reasonableness and rationality." *Id.* Appellate review of the penalty itself, other than as affected by prior agency actions, is limited to determining if the agency has abused the discretion granted it to impose sanctions. *Johnson–Bowles v. Division of Sec.*, 829 P.2d 101, 115–16 (Utah App.), *cert. denied*, 843 P.2d 516 (Utah 1992); *King*, 850 P.2d at 1288–90. Our evaluation of Pickett's claim applies this analytical process.

 In support of his contention that the Division acted contrary to prior practice, Pickett cites ten agency decisions in which pharmacists committed allegedly equal or more significant violations of the law, but

---

8. Certainly a non-deferential correction of error standard of review applies to a statute, such as UAPA, which does not address a particular agency but applies to all administrative agency proceedings, and is thus "non-agency specific." *See King*, 850 P.2d at 1285.

9. The majority opinion in *SEMECO* had no occasion to discuss the issue addressed by the portion of Justice Durham's dissenting opinion which we adopt and did not otherwise criticize or remark on her discussion of burdens of proof.

received substantially lighter penalties. To bolster his assertion that his transgression was less serious, Pickett points out that there was insufficient evidence to find he forged or falsified prescriptions, that he knew his long-time customer was drug dependent, or that he had ever made this type of mistake with any other customer. In other words, he claims that his error was simply inadvertence or negligence, rather than willful violation of the controlled substances laws. In contrast to Pickett's license revocation penalty, the penalties in the cases he cited consisted of license suspensions, probation or a combination of the two, but no license revocations.

We conclude that Pickett legitimately raised a question about the consistency of his penalty with prior agency practice. Therefore, after Pickett demonstrated that the agency's action in his case was apparently contrary to its prior decisions, section 63–46b–16(4)(h)(iii) shifted the burden to the agency to provide "facts and reasons that demonstrate a fair and rational basis for the inconsistency."

In his Order on Review, the Executive Director attempted to distinguish the cases cited by Pickett on the grounds that they were three to six years old and stated that Pickett's failure to include facts in three of the cases rendered them inapposite. In addition, the Executive Director argued that more recent cases demonstrated a change in policy towards more strict penalties.

The Division, however, apparently misunderstood its burden of proof under the requirements of section 63–46b–16(4)(h)(iii). In its brief, the Division improperly referred to *petitioner's* "burden of showing that the decision of the Board and Division is clearly unreasonable." It did not acknowledge its own burden of explaining the apparently unequal treatment of petitioner. Because the Division misunderstood the statutory requirements, it made no attempt to articulate a fair and rational basis for the apparent penalty inconsistencies. Instead, it provided only a sketchy description of the more recent cases and did not meaningfully attempt to rebut Pickett's characterization of the earlier cases.

In the absence of an explanation by the Division that the penalty imposed on Pickett is not aberrational when compared with other Division actions, this court is unable to evaluate the basis for the apparent disparity between Pickett's penalty, and penalties assessed in similar, or even more egregious cases. The lack of any explanation demonstrating that the agency reasonably departed from previous standards for assessing penalties, combined with the substantial prejudice this action has caused Pickett, leads us to conclude that Pickett is entitled to relief from the Division's order pursuant to section 63–46b–16(4)(h)(iii).

Because the Division failed to adhere to UAPA's plain mandate that it provide a sufficient rationale for deviations from prior agency action we need not reach the question of whether the Division abused its discretion in applying the license revocation penalty. Instead, we remand for imposition of a less onerous sanction, consistent with the Division's past practices.

## CONCLUSION

After Pickett established an apparent inconsistency between the Division's treatment of his case and prior decisions of the agency, the Division failed to meet its burden of stating a fair and rational basis for the inconsistency. For this reason, this court is constrained to remand this case to the Division for modification of the penalty imposed on Pickett, consistent with this opinion.

ORME and GARFF, JJ., concur.